# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00423-CV

**Robert Scott, Commissioner of Education, Appellant**

**v.**

**Alphonso Crutch LSC Charter School, Inc., Appellee**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT**
**NO. D-1-GN-08-002588, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING**

## MEMORANDUM OPINION

This is an appeal from an order denying the Commissioner of Education's plea to the jurisdiction. Alphonso Crutch LSC Charter School, Inc. (the "School"), a charter school, filed suit against the Commissioner to challenge the Texas Education Agency's withholding of state funds from the School based on alleged overallocations previously received by the School. The School asserted that the Commissioner's actions violated the Texas Constitution and various state statutes. We affirm the district court's order denying the Commissioner's plea to the jurisdiction with respect to the School's ultra vires claims and equal protection claim. However, we conclude that to affirmatively demonstrate the court's jurisdiction to hear the ultra vires claims, the School must amend its pleadings to identify a violation of statute or regulation that supports such claims. We reverse the district court's order with respect to the remaining constitutional claims, and we dismiss such claims for lack of subject-matter jurisdiction.

***Factual and Procedural Background***

The School is an open-enrollment charter school under chapter 12, subchapter D of the education code. An open-enrollment charter school is a part of the state's public school system and can be created by an institution of higher education, a non-profit organization, or a governmental entity. Tex. Educ. Code Ann. §§ 12.101(a), .105 (West 2006).

The dispute in this case originates out of the School's obligation to report its student attendance to the Texas Education Agency (TEA). Open-enrollment charter schools receive state funds in accordance with chapter 42 of the education code. *See id.* § 12.106 (West Supp. 2009). Under chapter 42, funds are disbursed on the basis of average daily attendance. *Id.* § 42.101 (West Supp. 2009). In order to report attendance information to TEA, each open-enrollment charter school must use the Public Education Information Management System (PEIMS) and comply with all applicable rules promulgated by TEA. *Id.* §§ 12.104(b)(2)(A), 42.006 (West Supp. 2009).

Based on various audits, investigations, and reviews of the School's attendance reporting, the TEA has determined more than once that the School received overallocations of state funds. In accordance with section 42.258 of the education code—which authorizes TEA to recover an overallocation of state funds by withholding from subsequent allocations of state funds, *see id.* § 42.258(a) (West 2006)—TEA began withholding funds from its monthly payments to the School to recover the alleged overallocations. Overallocations attributable to the 2003-04 school year are the subject of a separate lawsuit filed by the School against the Commissioner. *See Scott v. Alphonso Crutch Life Support Ctr.*, No. 03-06-00003-CV, 2009 Tex. App. LEXIS 5111

2

(Tex. App.—Austin July 2, 2009, pet. filed) (mem. op.). The current lawsuit, filed on July 18, 2008, concerns overallocations attributable to school years subsequent to the 2003-04 school year.

The School seeks injunctive and declaratory relief based on allegations that the Commissioner's actions violated state statutes. The School also alleges that the Commissioner's withholding of funding violates the provisions of the Texas Constitution providing for (1) adequate compensation for a taking of property, *see* Tex. Const. art. I, § 17; (2) due course of law, *see id.* art. I, § 19; (3) equal protection, *see id.* art. I, §§ 3, 3a; and (4) support and maintenance of an efficient system of public free schools, *see id.* art. VII, § 1. The Commissioner filed a plea to the jurisdiction based on sovereign immunity. On July 1, 2009, the district court denied the plea. The Commissioner appeals the district court's denial of his plea to the jurisdiction. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (West 2008).

### Standard of Review

A plea to the jurisdiction challenges the trial court's authority to determine the subject matter of a specific cause of action. *Hawkins v. El Paso First Health Plans, Inc.*, 214 S.W.3d 709, 716 (Tex. App.—Austin 2007, no pet.). Whether a court has subject-matter jurisdiction and whether a plaintiff has affirmatively demonstrated subject-matter jurisdiction are questions of law that we review de novo. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

In deciding a plea to the jurisdiction that challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause.

3

*Id.* We construe the pleadings liberally in favor of the plaintiffs and look to the pleader's intent. *Id.* If a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised. *Id.* at 227. If the evidence creates a fact question regarding the jurisdictional issue, the trial court cannot grant the plea to the jurisdiction. *Id.* at 227-28. However, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court should rule on the plea to the jurisdiction as a matter of law. *Id.* at 228.

The Commissioner argues that all of the School's claims are barred by sovereign immunity. Sovereign immunity embraces two principles: immunity from suit and immunity from liability. *Federal Sign v. Texas S. Univ.*, 951 S.W.2d 401, 405 (Tex. 1997). The Commissioner contends that the School's claims are barred by immunity from suit and, therefore, must be dismissed for lack of subject-matter jurisdiction. A suit against a state officer lawfully exercising his governmental functions is considered a suit against the State and is barred by sovereign immunity absent legislative consent. *McLane Co. v. Strayhorn*, 148 S.W.3d 644, 649 (Tex. App.—Austin 2004, pet. denied). It is for the legislature alone to waive or abrogate sovereign immunity. *Federal Sign*, 951 S.W.2d at 409.

### Claims of Constitutional Violations

District courts have subject-matter jurisdiction to review an administrative order that adversely affects a vested property right or otherwise violates a constitutional right. *See Continental Cas. Ins. Co. v. Functional Restoration Assocs.*, 19 S.W.3d 393, 397 (Tex. 2000). Thus,

4

the Commissioner does not have sovereign immunity to the extent the School asserts a cause of action for violation of a right under the Texas Constitution.

*Takings and Due Process Claims*

The School alleges that the Commissioner's withholding of funds to which the School is entitled resulted in an unconstitutional taking of its property. Article I, section 17 of the Texas Constitution provides that "[n]o person's property shall be taken, damaged, or destroyed for or applied to public use without adequate compensation being made." Tex. Const. art. I, § 17. In addition, the School asserts that the Commissioner's withholding of funds was not preceded by any opportunity for a meaningful review of the relevant calculations or the timetable for withholding and that, therefore, the Commissioner violated the School's right to procedural due process.[1] *See* Tex. Const. art. I, § 19.

The Commissioner contends that the School cannot allege a takings claim or due process claim because the School does not have a vested right in the funds at issue, due to TEA's retaining the ability to adjust the amount of funds due to the School. A right is "vested" when it has some definitive, rather than potential, existence. *City of La Marque v. Braskey*, 216 S.W.3d 861, 864 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). The School's constitutional claims require the existence of a vested right. *See Combs v. City of Webster*, 311 S.W.3d 85, 92

---

[1] The School also asserts in its briefing that the rules applicable to the proper documentation of the School's attendance are arbitrary and capricious, making what appears to be an allegation of a substantive due process violation. *See Bullock v. Hewlett-Packard Co.*, 628 S.W.2d 754, 757 (Tex. 1982). However, the School's allegation of due process violations in its pleadings refers only to procedural due process.

(Tex. App.—Austin 2009, pet. filed) (citing *Spring Branch Indep. Sch. Dist. v. Stamos*, 695 S.W.2d 556, 560-62 (Tex. 1985); *City of Houston v. Northwood Mun. Util. Dist. No. 1*, 73 S.W.3d 304, 311 (Tex. App.—Houston [1st Dist.] 2001, pet. denied)).  If, then, the Commissioner is correct that the School does not have a vested interest in the allocations at issue, the School's takings and due process claims have no merit, and the Commissioner's plea to the jurisdiction should be granted as to those claims.  *See id.*

TEA disburses state funds to the School based on average daily attendance. Tex. Educ. Code Ann. § 42.101.  To determine the correct amount, TEA relies, initially, on the School's reporting of its attendance information in the PEIMS.  *See id.* § 42.006.  However, TEA may conduct audits, monitoring, and other investigations of the school's compliance with the open-enrollment charter, *see* 19 Tex. Admin. Code § 100.1029(a) (2010), which includes provisions regarding participation in the PEIMS, *see* Tex. Educ. Code Ann. § 12.111(a)(12) (West 2006). Moreover, attendance is reported at six-week intervals, *see* 19 Tex. Admin. Code § 100.1047(d) (2010), further enabling TEA to make funding adjustments as a school year progresses.

It follows that the amount of allocations to which the School is entitled for a given time period is subject to change depending on updated attendance figures during the school year. Upon determining that a school district has received an overallocation, TEA is authorized by statute to recover from the district an amount equal to the overallocation.  *See* Tex. Educ. Code Ann. § 42.258(a).  TEA may recover such amount by withholding from subsequent allocations of state funds, as has occurred here.  *See id.*  Under the existing laws, the School is presumably aware that the amount of TEA funding that has been provided is not, by statute, fixed, as TEA is

6

authorized to recover overallocations. Thus, the amount of funding to which the School may ultimately be entitled is not fixed on the date funds are initially disbursed, and the School's entitlement to the precise amount of funding that has been received is conditional—based on ultimate, actual attendance levels—under state law. In other words, the School's interest in a definite amount remains contingent rather than unconditional, and potential rather than definitive. Therefore, in the event that the Commissioner recalculates the School's entitlement to funding at a lower amount than paid, the Commissioner's reduction of subsequent allocations to account for the recalculation would not impair a vested right. *See City of Webster*, 311 S.W.3d at 93-94.

The School has no vested right in the funds that have allegedly been wrongfully withheld. Therefore, the pleadings affirmatively negate the existence of jurisdiction over the School's takings and due process claims, and the Commissioner's plea to the jurisdiction should be granted as to those claims. *See Miranda*, 133 S.W.3d at 227. The district court erred in denying the plea to the jurisdiction with respect to the School's constitutional takings and due process claims.

*Equal Protection Claim*

The School contends that it has alleged a violation of the equal protection provision of the Texas Constitution. *See* Tex. Const. art. I, §§ 3, 3a. However, the entirety of the School's pleadings with respect to such an allegation is as follows:

Plaintiff is entitled to the equal protection of the laws under Article I, Sections 3, 3a, and 19 of the Texas Constitution, and Section 106 of the Civil Practice and Remedies Code which prohibits an unreasonable condition being placed on someone because of their race.

7

The School alleges no facts in support of a claim of an equal protection violation.[2] Therefore, the School has failed to allege facts that affirmatively demonstrate the court's jurisdiction to hear the cause. *See Miranda*, 133 S.W.3d at 226.

However, the Commissioner did not present any argument on the School's equal protection claim to the district court in his plea to the jurisdiction. The Commissioner relies on section 51.014 of the civil practice and remedies code for his appeal of the trial court's denial of his plea to the jurisdiction. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (allowing appeal from interlocutory order of district court that "grants or denies a plea to the jurisdiction by a governmental unit"). Because section 51.014 is a narrow exception to the general rule that only final judgments and orders are appealable, we strictly construe what may be considered in an interlocutory appeal. *See Austin Indep. Sch. Dist. v. Lowery*, 212 S.W.3d 827, 833-34 (Tex. App.—Austin 2006, pet. denied); *City of Dallas v. First Trade Union Sav. Bank*, 133 S.W.3d 680, 686-87 (Tex. App.—Dallas 2003, pet. denied). Since the Commissioner's arguments concerning the School's equal protection claim were not included in the Commissioner's plea to the jurisdiction, the district court did not consider the arguments and did not issue any interlocutory order in response to the arguments. Accordingly, we decline to consider the Commissioner's arguments with respect to the School's equal protection claim in this interlocutory appeal, in favor of allowing the district

---

[2] The School appears to be alleging that it is being treated differently by the Commissioner because its students are "predominantly African-American." The only evidence in the record that race is at issue is the statement by Vida Belford, the School's superintendent, that "TEA Attorney Jim Thompson made what I felt to be a racially discriminatory and derogatory statement to me, concerning the physical appearance of the students." However, despite making this allegation multiple times, Belford does not reveal what Thompson's statement was.

8

court to consider the issues in the first instance on remand, in the event the Commissioner files a plea to the jurisdiction that does address the School's equal protection claim, and after plaintiffs have had the opportunity to replead.

*Article VII, Section 1 Claim*

In its pleadings, the School alleges that "the system of funding public charter schools is woefully inadequate and discriminatory, inefficient or otherwise unconstitutional." The School contends that it has thereby asserted a claim that the Texas system of funding public education contains "vast inequities" and, therefore, violates article VII, section 1 of the Texas Constitution. *See* Tex. Const. art VII, § 1. However, the Texas Supreme Court has held that the current public education system, as a whole, does not violate the requirements of article VII, section 1. *See Neeley v. West Orange-Cove Consol. Indep. Sch. Dist.*, 176 S.W.3d 746, 783-94 (Tex. 2005). The School makes no allegation that the system of funding has changed since *Neeley* or that new information might alter the analysis in *Neeley*. The School's allegations focus merely on the financial shortfalls experienced individually by the School as a result of the Commissioner's attendance calculations and his withholding of funds based on those calculations.

Thus, the School's pleadings affirmatively negate the existence of jurisdiction to hear an article VII, section 1 claim. *See Miranda*, 133 S.W.3d at 226. The district court erred in denying the Commissioner's plea to the jurisdiction with respect to such claim.

9

***Ultra Vires Claims***

The School contends that it has asserted claims of statutory violations that fall within the ultra vires exception to sovereign immunity. Unlike a suit for damages based on a state official's discretionary acts, a cause of action to determine or protect a private party's rights against a state official who has acted without legal or statutory authority is an ultra vires claim that is not barred by sovereign immunity. *See Federal Sign*, 951 S.W.2d at 404. "[W]here statutory or constitutional provisions create an entitlement to payment, suits seeking to require state officers to comply with the law are not barred by immunity merely because they compel the state to make those payments." *City of El Paso v. Heinrich*, 284 S.W.3d 366, 371 (Tex. 2009).

The School refers to a provision in the "TEA Financial Accountability System Resource Guide" that states, "All school districts are required to adopt an attendance accounting system . . . which includes procedures that ensure the accurate taking, recording and reporting of attendance accounting data." The School contends that this statement is inaccurate and, therefore, the Commissioner "has clearly acted beyond the scope of authority granted by the Legislature." However, the statement in the Guide is supported by section 42.006 of the education code. Section 42.006(a) requires each school district to participate in the PEIMS and provide through that system information required for the administration of chapter 42, and section 42.006(b) requires each school district to use a uniform accounting system adopted by the Commissioner for the data required for the PEIMS. *See* Tex. Educ. Code Ann. § 42.006. Thus, the Commissioner did not act outside its statutory authority by requiring adoption of an accounting system that reports accurate attendance data.

The School also alleges that the Commissioner violated education code section 42.258(b) and government code section 403.055. Section 42.258(b) requires that if the School fails to comply with a request for a refund, TEA "shall certify to the comptroller that the amount constitutes a debt for purposes of Section 403.055, Government Code." *Id.* § 42.258(b). Government code section 403.055(g), in turn, requires that a state agency, before reporting the debt, "provides the person with an opportunity to exercise any due process or other constitutional or statutory protection that must be accommodated." Tex. Gov't Code Ann. § 403.055(g) (West 2005). We need not consider what process or protection is due under these two statutory provisions, however, because the provisions do not apply. Subsection (a) of education code section 42.258 states as follows: "If a school district has received an overallocation of state funds, the agency shall, by withholding from subsequent allocations of state funds or by requesting and obtaining a refund, recover from the district an amount equal to the overallocation." Tex. Educ. Code Ann. § 42.258(a). Thus, TEA has two options in the event of an overallocation. If TEA chooses to request a refund, sections 42.258(b) and 403.055 apply. *See id.* § 42.258(b). If, however, TEA chooses to withhold from subsequent allocations of state funds, section 42.258(b) does not apply, and therefore, neither does section 403.055. *See id.* Here, TEA chose the latter course.

The School further alleges that the Commissioner acted outside his statutory authority by withholding funds based on incorrect calculations of attendance, withholding such funds over too short a time period, and exceeding a maximum number of audits that may be performed on a school district. The School contends that these actions were a violation of sections 42.001 and 42.002 of the education code. Section 42.001 states as follows:

11

(a)     It is the policy of this state that the provision of public education is a state responsibility and that a thorough and efficient system be provided and substantially financed through state revenue sources so that each student enrolled in the public school system shall have access to programs and services that are appropriate to the student's educational needs and that are substantially equal to those available to any similar student, notwithstanding varying local economic factors.

(b)     The public school finance system of this state shall adhere to a standard of neutrality that provides for substantially equal access to similar revenue per student at similar tax effort, considering all state and local tax revenues of districts after acknowledging all legitimate student and district cost differences.

*Id.* § 42.001 (West 2006).  Similarly, section 42.002 states, in relevant part, as follows:

The purposes of the Foundation School Program set forth in this chapter are to guarantee that each school district in the state has:

(1)     adequate resources to provide each eligible student a basic instructional program and facilities suitable to the student's educational needs; and

(2)     access to a substantially equalized program of financing in excess of basic costs for certain services, as provided by this chapter.

*Id.* § 42.002(a) (West Supp. 2009).

These provisions set out goals and purposes applicable to the entire public school system.  The School does not allege that its decreased funding results from a flaw in the overall structure of statewide funding, which has been established so as to satisfy the above goals and purposes.  Rather, the School is alleging that the Commissioner failed to act in compliance with the existing funding structure.  This is not an alleged violation of sections 42.001 and 42.002.  By their plain language, sections 42.001 and 42.002 are not designed to govern the specific complaints made

12

by the School concerning its attendance records and reporting, the Commissioner's auditing of those records, or the recovery of overallocations based on such attendance reporting and auditing. For the allegations made here to constitute an ultra vires claim, the School must allege a violation not of the goals and purposes set out in education code sections 42.001 and 42.002, but of those statutes and regulations that implement the goals and purposes. The School has not done so.[3]

The School has not identified any statute or regulation that would prohibit the Commissioner from withholding funds based on incorrect calculations of attendance, establishing a time period for such withholding, or conducting multiple audits on a school's attendance records. Therefore, the School has failed to allege an ultra vires claim. *See Heinrich*, 284 S.W.3d at 372 ("To fall within this *ultra vires* exception, a suit . . . must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act."). However, the pleadings also do not affirmatively demonstrate incurable defects in jurisdiction. Thus, "the issue is one of pleading sufficiency and the plaintiff[] should be afforded the opportunity to amend." *Miranda*, 133 S.W.3d at 226-27. We conclude that the district court did not err in denying the Commissioner's plea to the jurisdiction. However, we also conclude that the district court has jurisdiction over the School's ultra vires claims only to the extent the School can identify a violation of statute or regulation that supports its claims—specifically, statutes or regulations that require the Commissioner to withhold funds based on correct calculations of attendance, that prohibit

---

[3] The School contends that it has alleged a violation of education code section 42.152. *See* Tex. Educ. Code Ann. § 42.152 (West Supp. 2009) (compensatory education allotment). However, the School provides no identification of which provision of section 42.152 was violated, no explanation of how it was violated, and no evidence that would support an allegation of a violation of section 42.152.

13

unmanageable time periods for withholding overallocations, or that limit the number of audits that may be conducted on a particular school.

### *Conclusion*

We affirm the district court's order denying the Commissioner's plea to the jurisdiction with respect to the School's ultra vires claims and equal protection claim. We reverse the district court's order with respect to the remaining constitutional claims asserted by the School, and such claims are dismissed for lack of subject-matter jurisdiction. Our affirmance in part is based on our conclusions that the pleadings do not affirmatively negate the district court's jurisdiction to hear the School's ultra vires claims, and that the Commissioner failed to challenge the School's equal protection claim. However, we also conclude that the pleadings with respect to the ultra vires claims do not affirmatively demonstrate the court's jurisdiction, and on remand the School should be afforded the opportunity to amend its pleadings.

_____

G. Alan Waldrop, Justice

Before Chief Justice Jones, Justices Pemberton and Waldrop

Affirmed in part; Reversed and Dismissed in part

Filed:   August 20, 2010