In The
 Court of Appeals
 Seventh District of Texas at Amarillo

--------------------------------------------------------------------------------
No. 07-12-00291-CV
 
MCALLEN HOSPITALS, L.P. D/B/A MCALLEN MEDICAL CENTER AND D/B/A EDINBURG REGIONAL MEDICAL CENTER AND D/B/A EDINBURG CHILDREN'S HOSPITAL AND D/B/A MCALLEN HEART HOSPITAL AND FORT DUNCAN MEDICAL CENTER, L.P. D/B/A FORT DUNCAN REGIONAL MEDICAL CENTER, APPELLANTS

 V.

THOMAS SUEHS, EXECUTIVE COMMISSIONER OF THE TEXAS HEALTH AND HUMAN SERVICES COMMISSION, DOUGLAS WILSON, INSPECTOR 2 GENERAL OF THE HEALTH AND HUMAN SERVICES COMMISSION; TEXAS HEALTH AND HUMAN SERVICES COMMISSION, ET AL, APPELLEES
 
--------------------------------------------------------------------------------
On Appeal from the 261st District Court
--------------------------------------------------------------------------------
Travis County, Texas
--------------------------------------------------------------------------------
Trial Court No. D-1-GN-10-002274, Honorable Orlinda Naranjo, Presiding 
 
 February 24, 2014
 
 OPINION
 
 Before CAMPELL and HANCOCK and PIRTLE, JJ.
McAllen Hospitals, L.P. and Fort Duncan Medical Center, L.P. (the Hospitals) appeal the trial court's order granting the Texas Health and Human Services Commission's plea to the jurisdiction and dismissing the Hospitals' claims. We will affirm the trial court's order in part, reverse it in part, and remand the cause for further proceedings.
 Factual and Procedural History
The Agency, Its Departments, and Its Duties
The Texas Health and Human Services Commission (THHSC) oversees the Texas Medicaid Program. Having entered into Medicaid provider agreements with the THHSC, the Hospitals are Medicaid providers. As such, the Hospitals provide medically necessary treatment to Texas Medicaid beneficiaries and submit claims to the THHSC for reimbursement.
The THHSC's Office of Inspector General (OIG) bears the responsibility for reviewing and determining the payment or denial of claims submitted by enrolled healthcare providers. Among its other duties, the OIG is legislatively charged with the specific duties of "prevention, detection, audit, inspection, review, and investigation of fraud, waste, and abuse in the provision and delivery of all health and human services in the state . . . and the enforcement of state law relating to the provision of those services." See Tex. Gov't Code Ann. § 531.102(a) (West Supp. 2013). "[U]pon a finding by the Inspector General of fraud and abuse in Medicaid," the OIG is authorized to impose sanctions against the offending provider. 1 Tex. Admin. Code § 371.11(a) (2013) (Tex. Health & Human Servs. Comm'n, Purpose and Scope). In response to "[p]rima facie cases of misuse, waste, abuse or fraud," the OIG can determine the "appropriate administrative enforcement, including recoupment and other necessary administrative action, sanction or penalty." Id. § 371.1701 (2011) (Tex. Health & Human Servs. Comm'n, Inspector General Investigation of Overpayments) repealed 37 Tex. Reg. 7998 (2012) (proposed Aug. 10, 2012).
Within the OIG is the Utilization Review (UR) Department, which is governed by Title 1, Chapter 371, Subchapter C of the Texas Administrative Code. The UR Department of the THHSC is charged with implementing the Texas Medical Review Program (TMRP). More specifically, the TMRP "is the inpatient hospital utilization review process used by the [THHSC] for hospitals reimbursed under the [THHSC]'s prospective payment system." Id. § 371.200(a) (2013) (Tex. Health & Human Servs. Comm'n, Inpatient Hospital Utilization Review Program). The Texas Administrative Code thoroughly outlines the TMRP review process and provides that "[t]he TMRP review process includes, but is not limited to . . . [a]dmission review to evaluate the medical necessity of the admission." Id. § 371.203(a)(1) (2013) (Tex. Health & Human Servs. Comm'n, Texas Medical Review Program (TMRP) Review Process). "For purposes of the TMRP reviews, medical necessity means the patient has a condition requiring treatment that can be safely provided only in the inpatient setting." Id.
In the event that a reviewed claim is deemed medically unnecessary or provided in an inappropriate setting, the THHSC will notify the enrolled provider of the denial decision and instruct the claims administrator to recoup payment on that claim. Id. § 371.206(a) (2013) (Tex. Health & Human Servs. Comm'n, Denials and Recoupments for Texas Medical Review Program (TMRP), Tax Equity and Fiscal Responsibility Act (TEFRA), and LoneSTAR Select II Contracted Hospitals) amended 38 Tex. Reg. 9479 (2013) (effective Jan. 1, 2014). It is worth noting that this denial is retroactive in nature, occurring two to three years after the date services were rendered.
With respect to a provider's remedies upon receiving a denial of payment under Section 371.206, the Texas Administrative Code provides the following:
If a hospital receives notification from the [THHSC] Utilization Review Unit of an adverse decision regarding medical necessity of admission, days of stay, diagnosis related group (DRG) validation, or a final technical denial, the hospital may appeal to [the THHSC]. The written notification of adverse decision will set out the responsible area and time frame within which the appeal must be received by [the THHSC]. The Texas Medicaid Policy and Procedure Manual provides additional information on the appeal process.
Id. § 371.208 (2013) (Tex. Health & Human Servs. Comm'n, Appeals Related to Utilization Review Department Review Decisions).
Payments and Actions at Issue
Between June 26, 2004, and January 7, 2008, the Hospitals rendered medical treatment on an inpatient basis to the patients whose medical treatment forms the underlying basis of this suit. At the time of medical treatment, these patients were recipients of Texas Medicaid medical benefits, and the Hospitals timely filed claims with the THHSC. The THHSC reimbursed the Hospitals for services rendered.
Two to three years after the medical services in question were rendered, the THHSC conducted a sample study of patients who were admitted to the Hospitals. See id. § 371.201 (2013) (Tex. Health & Human Servs. Comm'n, Case Selection Process). The OIG, through its UR Unit and under the authority provided by the TMRP, reviewed the medical records of each of the patients at issue to determine if the inpatient setting was medically necessary and the appropriate treatment setting or whether the treatment could have been rendered on an outpatient basis. In each case at issue, the UR Unit determined that it was not medically necessary for the treatment to be rendered in an inpatient setting and sent to the Hospitals a Notice of Admission Denial, informing the Hospitals that admissions on an inpatient basis were not medically necessary for these patients and directing that the payments be recouped.
The Hospitals appealed the OIG UR Unit's decision to the THHSC's UR/Medical Appeals Unit, as provided for in Section 371.208 and as directed by the UR Unit's denial letter. The appeal the Hospitals submitted to the UR Appeals Unit consisted of a written appeal supported by a written explanation of the reasons the Hospitals believed the inpatient service to be medically necessary.
Subsequently, the UR/Medical Appeals Unit denied the Hospitals' appeal, upholding the OIG UR Unit's decision that the inpatient setting was not medically necessary. The THHSC further advised that the UR/Medical Appeals Unit's determination was "the final administrative decision on your appealed case. Therefore, in accordance with Medicaid program policies and procedures, this determination is now considered final and the case is closed."
The Hospitals maintain that, to preserve their rights to additional administrative review, they sent requests to the OIG Manager of Sanctions that their appeals be forwarded to the Office of General Counsel (OGC) to be docketed, pursuant to 1 Tex. Admin. Code § 371.1667 (2011) (Tex. Health & Human Servs. Comm'n, Due Process for Administrative Sanctions) repealed 37 Tex. Reg. 7998 (2012) (proposed Aug. 10, 2012), and 1 Tex. Admin. Code § 371.1669 (2011) (Tex. Health & Human Servs. Comm'n, Notice of Appeal) repealed 37 Tex. Reg. 7998 (2012) (proposed Aug. 10, 2012). By letter dated June 16, 2010, the OIG denied the Hospitals' requests, outlining the OIG's positions that its determination was the final administrative decision, that the Hospitals had availed themselves of their appellate remedies, and that there were no further avenues for appeal available to the Hospitals.
Litigation Ensues
In July 2010, the Hospitals filed their Original Petition against the appellees. They would later amend their petition and, as is relevant to the matters presented to us in this appeal, sought declaratory relief as follows: (1) that the determinations made by the UR/Medical Appeals Unit is not a final agency determination; (2) that the Hospitals are entitled to a formal appeal on their claims; (3) that the THHSC's notice as to the three "insufficient documentation" cases, see supra note 5, was inadequate; and (4) that the Hospitals are entitled to proper notice as to those three claims. The Hospitals also sought mandamus relief as to these general topics, seeking a writ of mandamus from the trial court compelling the THHSC (1) to comply with the formal appeals procedures to which the Hospitals maintain they were entitled under their reading of the regulations and (2) to comply with the notice requirements as they relate to the three "insufficient documentation" cases. The Hospitals also advanced a takings claim, alleging that the THHSC effectively deprived the Hospitals of at least a portion of the reimbursement -- the portion that would have been medically necessary on an outpatient rather than inpatient basis -- without due process and due course of law. Finally, assuming that the determinations at issue were, in fact, final agency orders, the Hospitals sought de novo review of the medical necessity issue.
The THHSC responded by filing its plea to the jurisdiction and, alternatively, its affirmative defenses and general denial. On May 3, 2011, the trial court signed its Order Granting Defendants' Plea to the Jurisdiction on All Claims Except on Plaintiffs' Claim for Judicial Review, in which the trial court specifically withheld its ruling on the Hospitals' claim for judicial review and permitted the Hospitals to replead their allegations seeking declaratory judgment that the THHSC deprived the Hospitals of property without a meaningful opportunity to be heard. On May 8, 2012, after the Hospitals repleaded and after the THHSC re-urged its plea to the jurisdiction, the trial court signed its Order Granting Defendants' Plea to the Jurisdiction on Plaintiffs' Claims for Judicial Review and Denying Plaintiffs' Declaratory Judgment Ultra Vires Claim, effectively disposing of all claims and parties. From these orders, the Hospitals have appealed.

Appeal of the Trial Court's Order
On appeal, the Hospitals have presented three issues for this Court's consideration: (1) whether the trial court erred by finding that the recoupment of an overpayment by the THHSC's UR Unit is not a sanction; (2) whether the trial court erred by granting Appellees' plea to the jurisdiction, based on its finding that the Hospitals do not have a right to judicial review; and (3) whether the trial court erred by denying the Hospitals' petition for writ of mandamus and/or request for declaratory judgment, as they relate to technical denials. The procedural posture of this case and the import of the trial court's disposition of this case by way of a plea to the jurisdiction require us to address the issues raised in a slightly different manner.
 Applicable Law and Standard of Review
A plea to the jurisdiction challenges the court's authority to decide a case. Heckman v. Williamson Cnty., 369 S.W.3d 137, 149 (Tex. 2012); Sw. Pharm. Solutions, Inc. v. Tex. Health & Human Servs. Comm'n, 408 S.W.3d 549, 556 (Tex. App. -- Austin 2013, pet. denied). Challenges to a trial court's subject-matter jurisdiction are properly raised by a plea to the jurisdiction. Bland Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 554 (Tex. 2000).
We review de novo a trial court's ruling on a plea to the jurisdiction. See Tex. Dep't of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 226 (Tex. 2004). When a plea to the jurisdiction challenges the pleadings, we look to the pleader's intent, construe the pleadings liberally in favor of jurisdiction, and accept the allegations in the pleadings as true to determine if the pleader has alleged sufficient facts to affirmatively demonstrate the trial court's jurisdiction to hear the cause. Sw. Pharm. Solutions, 408 S.W.3d at 556 (citing Heckman, 369 S.W.3d at 150). The "trial court must grant a plea to the jurisdiction, after providing an appropriate opportunity to amend, when the pleadings do not state a cause of action upon which the trial court has jurisdiction." Harris Cnty. v. Sykes, 136 S.W.3d 635, 639 (Tex. 2004). If the pleadings affirmatively negate the existence of jurisdiction, then a trial court may grant a plea to the jurisdiction without allowing the plaintiff an opportunity to amend. Sw. Pharm. Solutions, 408 S.W.3d at 556. Our task, then, is to determine whether the Hospitals have alleged facts that affirmatively demonstrate the trial court's subject-matter jurisdiction over their claims.
 Issue Two: Right to Judicial Review
The Hospitals cite the general principle upon which they premise their contention that they are entitled to judicial review: "Texas law recognizes no right to judicial review of an administrative order unless (1) a statute provides the right, (2) the order adversely affects a vested property right, or (3) the order otherwise violates some constitutional right." See Cont'l Cas. Ins. Co. v. Functional Restoration Assocs., 19 S.W.3d 393, 397 (Tex. 2000). The Hospitals claim that they have a right to judicial review under at least two theories falling within Continental Casualty's exceptions: (1) the recoupment of the entire payments for services rendered to patients at issue constitutes an interference with a vested property right without the protections afforded by the due process and due course of law provisions, and (2) the UR/Medical Appeals Unit's decision is a final agency decision that is subject to judicial review as provided by the Administrative Procedure Act (APA). See Tex. Gov't Code Ann. § 2001.171 (West 2008).

Takings, Due Process, and Due Course of Law Claims
 In their second amended petition, the Hospitals attack the THHSC's actions as a violation of federal due process protection and state due course of law protection and also characterize the recoupment of funds in their entirety, without accounting for the reimbursement of medical services that were properly rendered, as an unconstitutional taking under the Texas Constitution. See U.S. Const. amend. XIV; Tex. Const. art. I, §§ 17, 19. We will address the trial court's jurisdiction as it relates to the allegations of these several constitutional violations.
Takings Claims Generally
The Texas Constitution provides that "[n]o person's property shall be taken, damaged, or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person." Tex. Const. art. I, § 17(a). Similarly, the United States Constitution provides that "private property [shall not] be taken for public use, without just compensation." U.S. Const. amend. V. Sovereign immunity does not shield the State from claims based on unconstitutional takings of property. Tex. Parks & Wildlife Dep't v. Sawyer Trust, 354 S.W.3d 384, 390 (Tex. 2011). Whether the government's actions are sufficient to constitute a taking is a question of law. Id. (citing Gen. Servs. Comm'n v. Little-Tex Insulation Co., 39 S.W.3d 591, 598 (Tex. 2001)).
To establish a takings claim, the claimant must seek compensation because the defendant intentionally performed actions that resulted in taking, damaging, or destroying property for public use without the owner's consent. Id. at 390 - 91. Whether a taking has occurred depends largely on definitional and conceptual issues. Id. at 391. The Hospitals' takings claims, as well as their due process and due course of law allegations, require that the Hospitals have a vested property interest at stake. See Combs v. City of Webster, 311 S.W.3d 85, 92 (Tex. App. -- Austin 2009, pet. denied) (citing, inter alia, Spring Branch Indep. Sch. Dist. v. Stamos, 695 S.W.2d 556, 560 - 62 (Tex. 1985), and City of Houston v. Northwood Mun. Util. Dist. No. 1, 73 S.W.3d 304, 311 (Tex. App. -- Houston [1st Dist.] 2001, pet. denied)). When a plaintiff "cannot establish a viable takings claim," a trial court lacks jurisdiction and should grant a plea to the jurisdiction. See Tex. Dep't of Transp. v. A.P.I. Pipe & Supply, LLC, 397 S.W.3d 162, 166 (Tex. 2013) (quoting Hearts Bluff Game Ranch, Inc. v. State, 381 S.W.3d 468, 491 (Tex. 2012)).
Discussion
The Hospitals maintain that, even if they were not entitled to further administrative review of the UR Unit's decision that the inpatient setting for treatment of the patients at issue was not medically necessary, they were still entitled to reimbursement for the portion of services that were properly rendered. To recoup the payments in their entirety, contend the Hospitals, is an unconstitutional taking without the protections of due course of law. For this reason, the Hospitals maintain, they are entitled to judicial review.
In response, the THHSC turns to a case from the Austin Court of Appeals in which that court examined the "vested property interest" exception in the context of a recoupment and redistribution of local sales tax revenues. See City of Webster, 311 S.W.3d at 92. The court first reiterated that a right is "vested" when it has some definitive, rather than potential, existence. See id. at 93. After reviewing relevant case law and applicable Texas Tax Code provisions, the court observed that, during a four-year period in which the Comptroller may refund or credit for overpayment or may assess a tax deficiency, "the amount of local sales tax to which a municipality is entitled for a given year is subject to change depending on refunds or other adjustments made by the Comptroller." Id. Until that four-year period expires, then, a "municipality's interest in a definite amount remains contingent rather than unconditional, and potential rather than definitive." Id. Based on this analysis, the Austin Court ultimately concluded that the appellees had no vested right in the tax revenues at issue. Therefore, their due course of law and constitutional takings claims failed as a matter of law, and the trial court should have granted the Comptroller's pleas to the jurisdiction as to those claims. Id. at 94.
Much like the appellees' interests in sale tax revenues remained subject to adjustment, here, the Hospitals' interests in reimbursement is subject to utilization review. Until such time has passed that their interests are no longer subject to adjustment or recoupment under the Texas Administrative Code's utilization review provisions or its other investigative and review procedures, the Hospitals' interests remain contingent and potential rather than definitive and unconditional. See id. at 93; see also Scott v. Alphonso Crutch LSC Charter Sch., Inc., 392 S.W.3d 165, 170 - 71 (Tex. App. -- Austin 2010, pet. denied) (mem. op.) (concluding that, because allocations to which a school was entitled for a given time period was subject to change depending on updated attendance figures during the school year, the school's "interest in a definite amount" was not vested and "remain[ed] contingent rather than unconditional, and potential rather than definitive"). The Hospitals, therefore, have no vested interest in the reimbursements at the time at which those reimbursements are issued. Because the Hospitals "cannot establish a viable takings claim," the trial court lacked jurisdiction and properly granted the THHSC's plea to the jurisdiction. See A.P.I. Pipe & Supply, 397 S.W.3d at 166.
Procedural Due Process and Due Course of Law
Looking at the Hospitals' procedural due process and due course of law claims separate and apart from their other constitutional claims, we note another deficiency as to these particular claims. It is true that, if an individual is deprived of a property right, the government must afford an appropriate and meaningful opportunity to be heard consistent with the requirements of procedural due process. See Perry v. Del Rio, 67 S.W.3d 85, 92 (Tex. 2001); Mayhew v. Town of Sunnyvale, 964 S.W.2d 922, 939 (Tex. 1998). Accordingly, a plaintiff alleging a procedural due process takings claim must establish that he was deprived of notice and an opportunity to be heard with respect to a decision affecting his property rights. Mayhew, 964 S.W.2d at 939.
The Hospitals seem to have alleged such a deprivation and, on appeal, maintain that the THHSC's "current practices are essentially requiring [the] Hospitals to provide services to Medicaid recipients on a zero charge basis and with no meaningful method of challenging the recoupment." The THHSC points out, however, that the Hospitals had a right to rebill for the services rendered as an outpatient status, as provided in the Texas Medicaid Provider Procedures Manual (TMPPM):
It is important to realize that any inpatient stay billed to Texas Medicaid is subject to retrospective review by the [T]HHSC UR Unit with the possibility for denial if the admission is determined not medically necessary. If the inpatient admission is denied as not medically necessary, [T]HHSC UR may allow services rendered during the first 23 hours (less than 24 hours) to be rebilled to TMHP [Texas Medicaid and Healthcare Partnership] as an outpatient claim if a physician's order for outpatient observation is present in the hospital medical record (per [1 Tex. Admin. Code] § 371.206(b)). The claim must be submitted to TMHP within 120 days from the date of the UR notification letter.
 Here, however, the record reveals nothing regarding whether the Hospitals attempted to avail themselves of the rebilling remedy, and the Hospitals do not allege that they did. Because the Hospitals fail to show that they availed themselves of the procedures available to them to remedy the matter of which they now complain, we cannot conclude they have asserted a viable procedural due process claim. See City of Paris v. Abbott, 360 S.W.3d 567, 582 (Tex. App. -- Texarkana 2011, pet. denied) (concluding that plaintiff who failed to avail himself of the procedures for appeal and opportunity to be heard on the matters at issue "cannot now assert a procedural due process takings claim"); Brown v. Univ. of Tex. Health Ctr. at Tyler, 957 S.W.2d 911, 916 (Tex. App. -- Tyler 1997, no pet.) (agreeing that plaintiff waived his right to complain that he was denied procedural due process when he failed to attend the scheduled hearing and avail himself of the opportunity to be heard and concluding that plaintiff's "opportunity to be heard was lost by his own inaction").
 So, for this additional reason, the Hospitals' procedural due process and due course of law claims fail, and the trial court properly granted the THHSC's plea to the jurisdiction on those claims. See City of Webster, 311 S.W.3d at 94.
Judicial Review of Final Agency Decision
The Hospitals also contend that the decision to recoup funds previously paid to the Hospitals is a final agency decision issued by the THHSC's UR/Medical Appeals Unit. That being so, the Hospitals maintain, they are entitled to judicial review of the UR/Medical Appeals Unit's decision under the statutory right provided to them by APA. In pertinent part, the APA provides that a "person who has exhausted all administrative remedies available within a state agency and who is aggrieved by a final decision in a contested case is entitled to judicial review under this chapter." Tex. Gov't Code Ann. § 2001.171. A "contested case" is a "proceeding, including a ratemaking or licensing proceeding, in which the legal rights, duties, or privileges of a party are to be determined by a state agency after an opportunity for adjudicative hearing." Id. § 2001.003(1) (West 2008).
The THHSC acknowledges that the APA creates a statutory right of judicial review for contested case proceedings. See Tex. Dep't of Protective & Regulatory Servs. v. Mega Child Care, Inc., 145 S.W.3d 170, 198 (Tex. 2004). Although the APA defines "contested case" and sets the procedural framework, as a general rule, it does not independently provide a right to a contested case hearing. Tex. Comm'n on Envtl. Quality v. City of Waco, 413 S.W.3d 409, 423 (Tex. 2013) (citing Eldercare Props., Inc. v. Tex. Dep't of Human Servs., 63 S.W.3d 551, 557 (Tex. App. -- Austin 2001, pet. denied)). The particular agency's enabling act determines whether rights are to be determined after an opportunity for adjudicative hearing, and agency rules may decide whether that opportunity may include a contested case hearing. Id. And, here, the THHSC points to its own rules and contends that the disposition of the UR appeal in this matter is, by definition, not a final decision resulting from a hearing or other contested case proceeding. See 1 Tex. Admin. Code § 354.2201(12) (2013) (Tex. Health & Human Servs. Comm'n, Definitions) (defining "Utilization Review Appeal" as a "request for review of, not a hearing on, a determination made by the [T]HHSC Utilization Review department to the Medical Appeals area within [T]HHSC").
Indeed, not every dispute between an agency and another party constitutes a "contested case" proceeding falling within the APA's provision regarding judicial review. To illustrate, the Texas Historical Commission's proceedings resulting in the agency's decision to "award" or not "award" a marker, approve or reject text or historical content, or any of the incidental decisions the agency makes during the historical marker approval process were not "contested cases" within the meaning of the APA and were, therefore, not subject to judicial review under Section 2001.171. See Bacon v. Tex. Historical Comm'n, 411 S.W.3d 161, 180 (Tex. App. -- Austin 2013, no pet.). Likewise, the Texas Commission on Environmental Quality's approval of a paper mill's wastewater discharge permit application was not a final decision in a "contested case" within the meaning of the APA. West v. Tex. Comm'n on Envtl. Quality, 260 S.W.3d 256, 262 (Tex. App. -- Austin 2008, pet. denied). For this reason, the Austin Court concluded, the APA did not govern judicial review of the Commission's decision in that case. See id.
Looking at the relevant provisions applicable to the UR appeals at issue here, it appears that the UR/Medical Appeals Unit's determination is not a "final decision in a contested case." To the contrary, the Texas Administrative Code defines the UR appeal here as specifically "not a hearing," and the APA defines a "contested case" as a "proceeding, including a ratemaking or licensing proceeding, in which the legal rights, duties, or privileges of a party are to be determined by a state agency after an opportunity for adjudicative hearing." Compare 1 Tex. Admin. Code § 354.2201(12), with Tex. Gov't Code Ann. § 2001.003(1). The Hospitals may disfavor this mechanism, but their disfavor does not alter the nature of the proceeding from which the determination at issue resulted; the determination at issue did not result from a "contested case" as contemplated by the APA, and, therefore, the APA does not provide the Hospitals the right to judicial review. See West, 260 S.W.3d at 261. The trial court properly concluded that it lacked jurisdiction over the Hospitals' claims for judicial review under the APA. See Bacon, 411 S.W.3d at 180, 183.
 Issues Ones and Three: Declaratory and Mandamus Relief
The Hospitals also complain that the trial court erred by denying its requests for declaratory and mandamus relief. We first address the Hospitals' claims seeking declaratory relief.
The Hospitals Claims Seeking Declaratory Relief
On appeal, the Hospitals complain that the trial court erred by denying their request for declaratory relief as it relates to the Hospitals' position regarding the three "insufficient documentation" cases, see supra note 5, in which the UR/Medical Appeals Unit concluded that there was "incomplete and insufficient" documentation. The Hospitals have maintained that they were entitled to notices of a preliminary technical denial and that, therefore, the THHSC violated the relevant regulations that would require such notices whenever the record was deemed insufficient. See 1 Tex. Admin. Code § 371.206, § 371.210 (2013) (Tex. Health & Human Servs. Comm'n, Inpatient Utilization Review for Hospitals Reimbursed under the Tax Equity and Fiscal Responsibility Act (TEFRA) Principles of Reimbursement or LoneSTAR Select II Contracting Program) amended 38 Tex. Reg. 9479 (2013) (effective Jan. 1, 2014). On that same premise, the Hospitals sought declaratory relief that any determinations issued by the THHSC without the proper notice are not final determinations and that the Hospitals are entitled to the notice on the three claims the Hospitals have identified. 
The Declaratory Judgments Act (DJA) does not enlarge a court's jurisdiction; it is a procedural device for deciding cases already within a court's jurisdiction. See Sawyer Trust, 354 S.W.3d at 388; Heinrich, 284 S.W.3d at 370. While the DJA waives sovereign immunity for certain claims, it is not a general waiver of sovereign immunity. See Sawyer Trust, 354 S.W.3d at 388. Generally, the DJA does not alter a trial court's jurisdiction. Id. (citing Tex. Natural Res. Conservation Comm'n v. IT-Davy, 74 S.W.3d 849, 855 (Tex. 2002)). And a litigant's couching its requested relief in terms of declaratory relief does not alter the underlying nature of the suit. Id.; Heinrich, 284 S.W.3d at 371. Consequently, sovereign immunity will bar an otherwise proper DJA claim that has the effect of establishing a right to relief against the State for which the Legislature has not waived sovereign immunity. See Sawyer Trust, 354 S.W.3d at 388; City of Houston v. Williams, 216 S.W.3d 827, 828 - 29 (Tex. 2007) (per curiam).
Not having independently established the trial court's subject-matter jurisdiction over their claims, the Hospitals cannot assert those claims as claims for declaratory relief; the trial court lacks jurisdiction over them. See Sawyer Trust, 354 S.W.3d at 388.
Mandamus Relief
At this point, we address the Hospitals' requests for mandamus relief as it relates to (1) the cases which the Hospitals claim should have been docketed pursuant to former Sections 371.1667 and 371.1669 as administrative appeals from the imposition of administrative sanctions and (2) the three "insufficient documentation" cases that the Hospitals claim fall within the "preliminary technical denials" provisions of the Texas Administrative Code. In the first of their two requests for mandamus, the Hospitals request that the THHSC be compelled to comply with the appeals process outlined in former Sections 371.1667 and 371.1669 of the Texas Administrative Code, a process the THHSC staunchly maintains it need not have implemented in this case. In fact, much of the debate and analysis of the relevant regulations stem from the Hospitals' claims for mandamus relief relating to the nondiscretionary duty they claim arises from their construction of the relevant regulations and the THHSC's contrary position that the applicable provisions mandate no such duty because recoupment under the UR process is not properly considered a "sanction." While the parties' conflicting constructions of the regulations and the issues concerning whether recoupment in this case is a "sanction" warranting further administrative review are interesting issues, the merits of these issues are not properly before us for the reasons that follow. 
The Texas Constitution empowers district courts to issue writs of mandamus to compel public officials to perform ministerial acts. Brennan v. City of Willow Park, 376 S.W.3d 910, 926 - 27 (Tex. App. -- Fort Worth 2012, pet. denied); see Tex. Const. art. V, § 8; In re Nolo Press/Folk Law, Inc., 991 S.W.2d 768, 775 (Tex. 1999) (orig. proceeding). The Texas Government Code further defines the district court's jurisdiction to issue writs: "A judge of a district court may, either in termtime or vacation, grant writs of mandamus, injunction, sequestration, attachment, garnishment, certiorari, and supersedeas and all other writs necessary to the enforcement of the court's jurisdiction." Tex. Gov't Code Ann. § 24.011 (West 2004). 
The THHSC reiterates on appeal the position that it espoused in the trial court: Proper construction of the applicable provisions reveals that the THHSC does not have the duty that the Hospitals' mistaken construction of the provision would impose on the THHSC. However, the merits of the mandamus claims -- that is, whether the requesting party has shown itself entitled to mandamus relief -- is of no moment when determining the issue of the district court's jurisdiction to hear the matter.
We look to a similar contention made before the Fort Worth Court of Appeals. See Brennan, 376 S.W.3d at 927. In Brennan, the appellees maintained that the trial court lacked subject-matter jurisdiction because the appellants, who had sought mandamus relief, had an adequate remedy at law and therefore were not entitled to mandamus relief. The court rejected the appellees' adequate-remedy-at-law argument as a basis for determining the trial court's jurisdiction:
Appellees' adequate-remedy-at-law argument is not relevant to whether or not the trial court possesses subject matter jurisdiction over Appellants' pleaded claim seeking mandamus relief. The trial court possesses subject matter jurisdiction over Appellants' claim for a writ of mandamus. That Appellants may, as Appellees argue, possess an adequate remedy at law and may therefore not be entitled to mandamus relief does not operate to deprive the trial court of subject matter jurisdiction over Appellants' mandamus action. Any determination that Appellants may possess an adequate remedy by appeal would be a determination of the merits of Appellants' claim for mandamus relief, not related to the trial court's subject matter jurisdiction.
Id. (citations omitted). The Brennan court concluded that the district court did have subject-matter jurisdiction over the appellants' mandamus claims, reversed the trial court's order granting the appellees' plea to the jurisdiction, and remanded the cause to the district court for further proceedings. See id. 927 - 28.
Here, the trial court's orders did not touch on the merits of the Hospitals' mandamus claims; it did not grant or deny mandamus relief. Perhaps, one could contend, implied within the trial court's orders is its conclusion that the Hospitals failed to show themselves entitled to mandamus relief, but that is not how the trial court expressly disposed of the case. We cannot fairly read the trial court's orders as doing anything more than granting the THHSC's plea to the jurisdiction, which means that the trial court had concluded, based on the pleadings and evidence before it, that it lacked subject-matter jurisdiction over the claims. As to the Hospitals' several other claims, we agree that the trial court did not have jurisdiction; as to the Hospitals' mandamus claims, we conclude that it did. See Tex. Const. art. V, § 8; Tex. Gov't Code Ann. § 24.011; Brennan, 376 S.W.3d at 926 - 27.
Whether the recoupment at issue here is properly deemed a "sanction" which may have entitled the Hospitals to further administrative appeal under former Sections 371.1667 and 371.1669 goes to the substantive "duty" element of the Hospitals' mandamus claims. See Brennan, 376 S.W.3d at 927. Likewise, as to the Hospital's mandamus claims relating to the three "insufficient documentation" cases, the nature of the THHSC's duty, if any, is a substantive element of the mandamus claims. As to these substantive elements of the Hospitals' mandamus claims, the trial court had jurisdiction to address the merits of the issue but simply has not done so. The effect of our disposition is that the Hospitals' first issue, which goes to the merits of the parties' competing constructions of the relevant regulations at play, is subsumed within our disposition of the mandamus issue. That is, the precise nature and bounds of the duty or duties the THHSC owed to the Hospitals under the relevant statutes and regulations -- whether the Hospitals may show themselves entitled to mandamus relief -- has yet to be determined by the trial court. The Hospitals' mandamus claims are within the trial court's jurisdiction and are therefore remanded to the trial court for its consideration and disposition.
 Conclusion
Because the trial court lacked jurisdiction over the Hospitals' claims relating to constitutional deprivations, judicial review, and declaratory relief, the trial court properly granted the THHSC's plea to the jurisdiction. To the extent the trial court concluded that it lacked jurisdiction over the Hospitals' requests for mandamus relief, it erred.
Accordingly, we reverse the portion of the trial court's order granting the THHSC's plea to the jurisdiction only as it relates to the Hospitals' claims for mandamus relief and remand that portion of the cause to the trial court for further proceedings. We affirm the trial court's order in all other respects. See Tex. R. App. P. 43.2(a), (d).

 Mackey K. Hancock
 Justice