**Reversed and Remanded and Majority and Dissenting Opinions filed August 20, 2019.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-18-00278-CV

---

**JOHN MCNEILL, JR, R.PH.; AND NICHOLS SOUTHSIDE PHARMACY, Appellants**

**V.**

**COURTNEY N. PHILLIPS, EXECUTIVE COMMISSIONER; SYLVIA HERNANDEZ KAUFFMAN, INSPECTOR GENERAL; AND TEXAS HEALTH AND HUMAN SERVICES COMMISSION, Appellees**

---

**On Appeal from the 200th District Court
Travis County, Texas
Trial Court Cause No. D-1-GN-14-002090**

---

### DISSENTING OPINION

I agree with the majority that we have appellate jurisdiction, but I cannot join the majority's decision on due process, which is supported by neither the briefing nor the case law.

The main question in this case is whether the trial court was deprived of subject-matter jurisdiction, and to answer that question, the analysis must begin with the recognition that the Defendants are protected by sovereign immunity. *See Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 n.2 (Tex. 2008) (holding that sovereign immunity protects the State, its agencies, and their officers). By virtue of that immunity, the trial court could not have jurisdiction over McNeill's lawsuit unless his pleadings fell within a legislative waiver of immunity or some other type of immunity exception.

Did McNeill's pleadings clear that jurisdictional hurdle?

McNeill sought declaratory relief under the Uniform Declaratory Judgments Act ("UDJA"), which provides a limited waiver of sovereign immunity. *See Tex. Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 621–22 (Tex. 2011) (per curiam). However, the trial court ruled that the UDJA's limited waiver did not encompass McNeill's claim, and McNeill has not challenged that ruling on appeal. So we cannot resolve the jurisdictional dispute on that basis.

McNeill also sought mandamus relief against the executive commissioner and inspector general (the "Officers"), thereby invoking the ultra vires exception to sovereign immunity. *See City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009) (holding that ultra vires claims are not prohibited by sovereign immunity). The trial court denied McNeill's request for mandamus relief, but unlike with his UDJA claim, McNeill has sought appellate review of this ruling.

McNeill argues in his brief that the Officers have a duty to provide him with a contested case hearing, and that this duty is ministerial under three independent authorities. Those authorities are Section 531.1201 of the Texas Government Code, former Section 371.1667 of the Texas Administrative Code, and Section 2260.102 of the Texas Government Code. If McNeill is correct that any one of these authorities

2

requires the Officers to provide him with a contested case hearing, then McNeill would have a viable claim for mandamus relief, and the trial court would have jurisdiction under the ultra vires exception.

The majority wholly fails to consider any of these authorities. Instead, the majority races to a constitutional ruling under the Due Process Clause, which is wrong for the following reasons.

## I.     The due-process point is inadequately briefed.

McNeill addresses his due-process point in only three sentences in his brief, writing:

> Finally, the trial court erred in concluding that [McNeill] has no right to a hearing, either under statute or under the due process clauses of the Texas Constitution. . . [McNeill] has a property interest in [his] money, in [his] Medicaid contract with HHSC, and in [his] contracts with third parties the HHSC forced to act as its collection agents. The trial court should not have granted the plea to the jurisdiction and denied mandamus relief.

These sentences appear in the "Summary of Argument" section of the brief, which is supposed to be a "succinct, clear, and accurate statement of the arguments made in the body of the brief." *See* Tex. R. App. P. 38.1(h). But when we turn to the "Argument" section of McNeill's brief, there is no discussion at all about a deprivation of property interests in violation of the Due Process Clause. Without any arguments or authorities provided on this issue, the majority has no business addressing it. *See* Tex. R. App. P. 38.1(i); *ERI Consulting Engr's, Inc. v. Swinnea*, 318 S.W.3d 867, 880 (Tex. 2010) ("The Texas Rules of Appellate Procedure require adequate briefing.").

## II. The majority violates the doctrine of constitutional avoidance.

Even if McNeill had adequately briefed the due-process point, this court has an obligation to begin its analysis with McNeill's nonconstitutional arguments because, if meritorious, those arguments would afford a narrower basis for the court's decision. *See In re B.L.D.*, 113 S.W.3d 340, 349 (Tex. 2003) ("As a rule, we only decide constitutional questions when we cannot resolve issues on nonconstitutional grounds.").

The majority's treatment of McNeill's nonconstitutional arguments is contradictory and confusing. On the one hand, the majority asserts in a footnote that "it is factually impossible to have examined the merits of the nonconstitutional questions." On the other hand, the majority asserts on the very same page that it has identified three nonconstitutional issues relating to the amount of the vendor hold, the enforcement of the Rule 11 agreement, and the validity of the Defendants' extrapolation methodology.

The "factual impossibility" point has no basis in law, and the other points miss the mark. In this jurisdictional dispute, the nonconstitutional arguments that the majority should be focusing on are McNeill's mandamus arguments that invoke the ultra vires exception to sovereign immunity. The majority has completely shirked its obligation to address those arguments.

## III. The majority's merits analysis is erroneous.

### A. The majority fails to address a necessary argument on the merits.

Trial courts have subject-matter jurisdiction to review an administrative order that adversely affects a property right—but only when the property right is vested. *See Cont'l Cas. Ins. Co. v. Functional Restoration Assocs.*, 19 S.W.3d 393, 397 (Tex. 2000); *see also KEM Tex., Ltd. v. Tex. Dep't of Transp.*, No. 03-08-00468-CV,

2009 WL 1811102, *6 (Tex. App.—Austin June 26, 2009, no pet.) (mem. op.) (explaining that sovereign immunity does not bar a suit under this "inherent right of judicial review").

The majority undertakes no analysis to consider whether McNeill has a vested property right in the payments he receives under the Vendor Drug Program. Nor does the majority address the Defendants' argument that McNeill's property right is *not* vested—an argument that was made despite McNeill's failure to brief the same issue.

Once the majority chose to rule on the due-process point, the majority was required to address the Defendants' argument on vested rights, and by not doing so, the majority has violated our own rules. *See* Tex. R. App. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal.").

## B.     McNeill does not have a vested right in these payments.

McNeill asserted in his pleadings (but failed to argue in his appellate brief) that he had a vested right in the money he received. His assertion cannot withstand scrutiny.

A "vested right" is "something more than a mere expectancy." *See Honors Academy, Inc. v. Tex. Educ. Agency*, 555 S.W.3d 54, 61 (Tex. 2018). It must have some "definitive, rather than potential, existence." *See Combs v. City of Webster*, 311 S.W.3d 85, 93 (Tex. App.—Austin 2009, pet. denied).

McNeill's contract with the Defendants conclusively negates any possibility of a definitive right to payment. The contract provides:

> In accordance with the requirements of Texas Government Code
> § 2262.003, the Provider understands and agrees that the acceptance of
> funds under this Contract acts as acceptance of the authority of the SAO

[State Auditor's Office], or any successor agency, to conduct an investigation in connection with those funds. The Provider further agrees to cooperate fully with the SAO or its successor in the conduct of the audit or investigation, including providing all records requested.

A separate provision of the contract incorporates "all regulations, rules, policies, or procedures issued by HHSC to regulate the Vendor Drug Program." That incorporation necessarily includes Title 1, Section 354.1891 of the Texas Administrative Code, which, in its applicable form, provides that "all providers participating in the Vendor Drug Program are subject to periodic audit" and that "erroneous payments and overpayments that occur because of noncompliance with program requirements are considered exceptions subject to restitution to the Commission."

These provisions demonstrate that any payments McNeill receives under the Vendor Drug Program are subject to review and recoupment. Because these payments are potential, rather than definitive, McNeill has no vested right in them. *See McAllen Hosps., L.P. v. Suehs*, 426 S.W.3d 304, 312–13 (Tex. App.—Amarillo 2014, no pet.) (holding that hospitals did not have a vested right in Medicaid payments because the payments were subject to review and recoupment); *Scott v. Alphonso Crutch LSC Charter Sch., Inc.*, 392 S.W.3d 165, 170–71 (Tex. App.—Austin 2010, pet. denied) (holding that a school did not have a vested right in payments based on attendance rates because the payments were subject to review and recoupment).

## C.   *Pharmserv* is controlling.

The majority appears to believe that no showing of a vested right is required because there were disputed fact issues in the case. This reasoning cannot be squared with *Pharmserv, Inc. v. Texas Health & Human Services Commission*, No. 03-13-00526-CV, 2015 WL 1612006 (Tex. App.—Austin Apr. 9, 2015, no pet.) (mem.

6

op.), which rejected a due-process argument on virtually the same set of facts. *Id.* at *6 (conducting a vested-rights analysis even though there were disputed fact issues regarding the agency's audit).

The majority suggests that we are not bound by *Pharmserv* because that case addressed the "due course of law" guarantee under the Texas Constitution, whereas McNeill has complained of "due process" and has cited to a case invoking the Fifth Amendment to the United States Constitution. These points are completely meritless. We look at the pleadings in a jurisdictional analysis, and McNeill's pleadings assert a violation under Article I, Section 19 of the Texas Constitution, just like in *Pharmserv*. *Id.* And in any event, our supreme court has specifically held that there is no meaningful distinction between the "due course of law" guarantee under the Texas Constitution and the Due Process Clause of the United States Constitution. *See Univ. of Tex. Med. Sch. at Houston v. Than*, 901 S.W.2d 926, 929 (Tex. 1995).

Because this case was transferred to us from the Third Court of Appeals, the same court that decided *Pharmserv*, we are obligated to follow *Pharmserv* as binding precedent. *See* Tex. R. App. P. 41.3. The majority offers no sound basis for its decision to the contrary.

## IV. The majority's remedy is nonsensical.

The majority remands the case to the trial court "for a determination as to whether the process afforded herein is compliant with the Supreme Court's decision in *Eldridge*."

Where is the point in that? We already have an extensive paper record containing the draft audit report, the final audit report, McNeill's responses to those reports, his requests for an appeal, the Defendants' replies to those requests, and

several notices of informal hearings. The trial court had that paper record too, and it concluded that McNeill failed to establish a due-process violation. What sort of analysis does the majority expect the trial court to perform on remand that it did not perform the first time, and that this court could not determine for itself?

We, as an appellate court, are capable of performing our own review of a due-process claim. That review is subject to a two-part test: we must first determine whether the plaintiff has a liberty or property interest that is entitled to due-process protection, and if so, we must then determine what process is due. *See Mosley v. Tex. Health & Human Servs. Comm'n*, — S.W.3d —, 2019 WL 1977062, at *9 (Tex. May 3, 2019). Because the majority has already concluded (erroneously) that the denial of a contested case hearing resulted in a denial of due process, the more sensible solution would be to give McNeill the process that he is owed, rather than remand to the trial court for a pointless exercise. *Id.* at *13 ("The remedy for a denial of due process is due process.").

***

Based on the foregoing, I would not conclude that the trial court has subject-matter jurisdiction because of a claimed deprivation of due-process rights. I would instead address McNeill's nonconstitutional arguments for mandamus relief and any other issues that were adequately briefed and necessary to final disposition of the appeal. Because the majority does not, I respectfully dissent.


/s/     Tracy Christopher
Justice


Panel consists of Justices Christopher, Hassan, and Poissant. (Hassan, J., majority).