**DUER WAGNER & CO.
et al., Appellants,[1]**

v.

**CITY OF SWEETWATER, Appellee.**

No. 11–00–00276–CV.

Court of Appeals of Texas,
Eastland.

June 18, 2003.

1.  Appellants, referred to as "Duer Wagner" in this opinion, are Duer Wagner & Co.; Duer Wagner, Jr.; Duer Wagner, III; Bryan C. Wagner; James D. Finely; Trade Exploration Corp.; Junia F. Stoddard; W.E. Leroux Trust; Dennis D. Corkran; John David Andrews; Jacque Oil & Gas; H.E. Patterson; Headington Oil Co.; R.J. Sullivan Trust; and Unit Petroleum.

Earl A. Hargrave, Glenn Sodd, Micah Hadden, Dawson & Sodd, P.C., Corsicana, George Chapman, Scott P. Stolley, Thompson & Knight, Dallas, W.H. Hoffmann, Jr., Eastland, for appellant.

Lance Hall, R. Temple Dickson, Moore, Dickson, Maxwell & Baker, Peter F. Sheridan, Griggs & Sheridan, Rod E. Wetsel, Steakley & Wetsel, Sweetwater, for appellee.

Panel consists of ARNOT, C.J., and WRIGHT, J., and McCALL, J.

### Opinion

W.G. ARNOT, III, Chief Justice.

This is an appeal from a condemnation proceeding wherein the only issue in the trial court was the value of the property taken by eminent domain. The parties waived a jury trial, and the trial court found that the land had a total value of $556,110. Duer Wagner appeals. We reverse and remand.

Duer Wagner owned an undivided 39.232955 percent of the 1,798.4 acres that were condemned by the City of Sweetwater. The City condemned the property in order to obtain water from the underlying aquifer as an additional, municipal water supply source. For many years prior to the condemnation, the City had purchased water from the owners of that property. After Duer Wagner purchased the property, the price charged for water increased dramatically. The City ultimately terminated its contract to purchase water from Duer Wagner. Subsequently, unable to agree upon a purchase price for the property in question, the City brought condemnation proceedings. Pursuant to TEX. R.CIV.P. 11, the parties entered into an agreement regarding the propriety of the condemnation and the ownership of the property; they stipulated that the only issue to be tried was the value of the property condemned.

Compensation for real property taken by eminent domain is measured by the fair market value of the land at the time of the taking. TEX. PROP. CODE ANN. § 21.042(b) (Vernon Supp.2003); *Exxon Pipeline Company v. Zwahr*, 88 S.W.3d 623, 627 (Tex.2002); *City of Harlingen v. Estate of Sharboneau*, 48 S.W.3d 177, 182 (Tex.2001). Thus, the question arises as to how to measure the market value of the property. The *Sharboneau* court set forth the long-recognized definition of market value and the three traditional approaches to determining that value:

> Market value is "the price the property will bring when offered for sale by one who desires to sell, but is not obliged to sell, and is brought by one who desires to buy, but is under no necessity of buying." The three traditional approaches to determining market value are the comparable sales method, the cost method, and the income method. (Citations omitted)

*City of Harlingen v. Estate of Sharboneau*, supra at 182; see *Religious of the Sacred Heart of Texas v. City of Houston*, 836 S.W.2d 606, 615–16 (Tex.1992). Under the comparable sales method, which is the favored approach, data for voluntary sales of similar property is gathered and then adjusted based upon the differences in the properties. If insufficient comparable sales figures exist or if the comparable sales method is otherwise inadequate as a measure of fair market value, the cost approach or the income approach may be appropriate. *City of Harlingen v. Estate of Sharboneau*, supra at 183. At issue in the present case was the use of the income approach. The income approach is deemed appropriate when the property would, in the open market, be priced according to the income that it already gen-

erates. *City of Harlingen v. Estate of Sharboneau,* supra at 183; see *Coastal Industrial Water Authority v. Trinity Portland Cement Division, General Portland Cement Company,* 523 S.W.2d 462, 466–71 (Tex.Civ.App.-Houston [1st Dist.] 1975, writ ref'd n.r.e.); *Brazos River Conservation and Reclamation Dist. v. Costello,* 169 S.W.2d 977, 987–89 (Tex.Civ.App.-Eastland 1943, writ ref'd w.o.m.). No matter which of the three methods is used, "the goal of the inquiry is always to find the fair market value of the condemned property ... an amount that a willing buyer would actually pay to a willing seller." *City of Harlingen v. Estate of Sharboneau,* supra at 183.

■ The record in this case shows that, on the day that the jury trial was set to commence, the trial court granted the City's motion in limine regarding the use of the income approach to valuation. The next day, the trial court entered an order excluding Duer Wagner's expert witnesses because their opinions were admittedly based upon the income approach. In its order, the trial court ruled that the income approach was invalid as a matter of law. Based upon the trial court's determination, Duer Wagner's attorneys decided to withdraw their request for a jury trial (rather than wasting the jury's time) and to preserve the issue for appeal by presenting the testimony of their expert witnesses in "bills of exceptions." Duer Wagner's attorneys called their valuation experts to the stand to make "bills of exceptions" or offers of proof regarding their opinion as to the value of the property based upon the income approach. The trial court refused the tender of each of Duer Wagner's bills of exceptions. The City then called its witnesses to testify regarding the value of the condemned property. After closing arguments, the trial court took the case under advisement. Subsequently, judg-

ment was rendered and findings of fact were made.

In one of its findings of fact, the trial court found:

There was not sufficient evidence that there was a market in the area of the condemnation for water at the prices or in the quantities or for the projected term used by [Duer Wagner's] expert witnesses *to project the value of the property based on its income, i.e., the use of the income approach to value.*

After hearing all the evidence, the court concluded that *the evidence introduced by all parties concerning the income approach to value was admissible in evidence, but it further found that the evidence so admitted lacked reliability.* (Emphasis added)

In its conclusions of law, the trial court stated:

[T]he income approach to determine value may or may not be proper in determining the value of ranch/farm land such as the property in question.... *Assuming the income approach to be proper and appropriate, which the Court has done for the purpose of this conclusion,* the fair market value of the property in question, based on a preponderance of the credible evidence in the case, should be determined by comparable sales in the area.... *The Court determined that it would fully consider testimony introduced by the parties regarding the income approach to value of [Duer Wagner's] experts,* but finds that such experts' analysis failed to consider actual sales from the water field or anywhere else in the area and failed to consider in a meaningful way actual expenses and is therefore so speculative as to cause it to lack credibility.... *Although the Court took into consideration the testimony concerning the income approach to value,* it found that

the results of that approach when using sporadic sales and varying quantities of water were speculative. (Emphasis added)

The trial court erred by excluding as a matter of law any testimony using the income approach to valuation and then considering such excluded "evidence" when reaching its findings of fact and conclusions of law. *Thompson v. Johnson*, 92 Tex. 358, 51 S.W. 23, 24 (1898). There was no evidence upon which to base the trial court's findings and conclusions with respect to the income approach to valuation. By the exclusion of the offers of proof with respect to the income approach, Duer Wagner was left with nothing but tendered bills of exceptions and an issue preserved for appeal. The trial court erred by considering the excluded testimony and by basing its findings and conclusions upon such non-evidence. Duer Wagner need not have and, indeed, may not have put forth all of their proof in their bills. Consequently, we must reverse the judgment of the trial court and remand the cause for a new trial. Duer Wagner's second issue is sustained insofar as it relates to the trial court's erroneous injection into evidence of the excluded testimony after the conclusion of the trial. The remaining issues need not be addressed. TEX.R.APP.P. 47.1.

The judgment of the trial court is reversed, and the cause is remanded to the trial court for further proceedings.