**Reversed and Remanded and Majority and Dissenting Opinions filed August 20, 2019.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-18-00278-CV

---

### JOHN MCNEILL, JR., R.PH.; AND NICHOLS SOUTHSIDE PHARMACY, Appellants

### V.

### COURTNEY N. PHILLIPS, EXECUTIVE COMMISSIONER; SYLVIA HERNANDEZ KAUFFMAN, INSPECTOR GENERAL; AND TEXAS HEALTH AND HUMAN SERVICES COMMISSION, Appellees

---

**On Appeal from the 200th District Court**
**Travis County, Texas**
**Trial Court Cause No. D-1-GN-14-002090**

---

## MAJORITY OPINION

In this appeal from an order granting a plea to the jurisdiction and denying a petition for writ of mandamus, appellants John McNeill and Nichols Southside Pharmacy [collectively, "McNeill"] complain (1) he should receive a contested case hearing to challenge the results of an administrative agency's audit, (2) the agency

failed to comply with a valid Rule 11 agreement, and (3) the agency completed its audit using a faulty extrapolation methodology. We reverse the trial court's grant of the appellees' plea to the jurisdiction and remand this case to the trial court for further proceedings to determine whether the process provided to McNeill comports with clearly established Due Process jurisprudence concerning administrative takings.

## BACKGROUND

McNeill entered into a contract with the Texas Health and Human Services Commission ["Commission"] to provide prescription drugs under Medicaid and the Vendor Drug Program. According to the plain language of the contract, McNeill agreed to comply with "the applicable requirements of the Medicaid and Vendor Drug Programs." One such requirement was that McNeill's pharmacy would have to submit to periodic performance audits.

The Commission audited McNeill's pharmacy and concluded it overpaid by $70,266.36. The Commission calculated that figure by examining certain errors within a three-year period that were discovered from a random sampling of billing records and extrapolating the alleged overpayment from those errors. In a response to the draft audit report, McNeill challenged the Commission's extrapolation methodology and underlying factual assumptions. After receiving McNeill's response, the Commission revised its audit report and reduced the amount of the alleged overpayment to $69,911.48. The Commission also advised McNeill he had a right to appeal the audit results under Title 1, Section 354.1891(c) of the Texas Administrative Code.[1]

---

[1] The applicable version of that regulation provides as follows: "If a provider disagrees with the initial findings of an audit, the provider may present additional documentation to the Commission's auditor for review. Also, on written request, the Commission provides an opportunity for audit resolution for a provider who wants to present documentation not available

2

McNeill invoked his right of appeal and the Commission scheduled an informal hearing to discuss the audit exceptions that were still challenged. After the hearing, the Commission sent a "Final Notice" advising McNeill that the amount of the overpayment had been reduced to $64,549.30. The Commission did not mention any additional right to appeal and advised that McNeill should arrange for payment within thirty days or a vendor hold would be imposed.

Citing Section 531.1201 of the Texas Government Code, McNeill then asked the Commission to docket a contested case hearing before the State Office of Administrative Hearings ["SOAH"].[2] The Commission responded that it would not do so.

McNeill promptly renewed his request for a contested case hearing under Section 531.1201 and invoked appellate provisions applicable to administrative actions and sanctions. In response to McNeill's renewed request, the Commission explained he was not entitled to a hearing under Section 531.1201 because that statute applies to cases "arising out of a fraud or abuse investigation," whereas McNeill's case arose out of a performance audit. The Commission also explained McNeill's reliance on other cited regulations was misplaced because they did not control over Rule 354.1891(c) (which applies specifically to audits).

_____

at the time of audit. If the provider still disagrees and wants to appeal, the Commission, upon receipt of written request to the Manager of Contracts and Rebates, provides either an informal hearing or additional desk review." 1 Tex. Admin. Code Ann. § 354.1891(c).

[2] The applicable version of that statute provides as follows: "A provider must request an appeal under this section not later than the 15th day after the date the provider is notified that the commission or the commission's office of inspector general will seek to recover an overpayment or debt from the provider. On receipt of a timely written request by a provider who is the subject of a recoupment of overpayment or recoupment of debt arising out of a fraud or abuse investigation, the office of inspector general shall file a docketing request with the State Office of Administrative Hearings or the Health and Human Services Commission appeals division, as requested by the provider, for an administrative hearing regarding the proposed recoupment amount and any associated damages or penalties." Tex. Gov't Code Ann. § 531.1201(a).

3

When McNeill failed to pay the demanded restitution within the allotted time frame, the Commission requested a vendor hold. McNeill then filed suit against the Commission, its executive commissioner, and its inspector general [collectively, the "Defendants"] seeking declaratory and mandamus relief.[3]

McNeill also moved for a temporary restraining order and alleged Defendants were withholding more than the amount of the claimed overpayment. During the hearing, McNeill produced evidence that $96,000.00 was currently subject to the vendor hold, an amount in excess of the alleged overpayment of $64,549.30. When the trial court indicated that the excessive withholding was unauthorized,[4] the parties entered into a Rule 11 agreement promising Defendants would "release any amount above $64,531.30 from the vendor hold" within ten days. The parties further agreed the Rule 11 agreement "would remain in place during the pendency of this case, pending further orders of the court."

Eight months later, McNeill moved to enforce the Rule 11 agreement and alleged the amount of payments subject to the vendor hold still exceeded the amount of the alleged overpayment. The record does not reveal a ruling on this motion.

McNeill then amended his pleadings and Defendants asserted sovereign immunity in a plea to the jurisdiction. McNeill filed a response and the trial court conducted a hearing (but declined to rule). Instead, it took the plea to the jurisdiction under advisement and proceeded to a non-jury trial on the merits.

---

[3] At the time of suit, the executive commissioner was Kyle Janek and the inspector general was Douglas Wilson. Because Janek and Wilson no longer occupy the public offices in which they were sued, we have substituted their names in the style of this appeal with the current officeholders. *See* Tex. R. App. P. 7.2.

[4] The trial court referred to a regulation that states "a vendor hold placed due to a failure to pay restitution within the allotted time period . . . will be lifted when restitution is paid in full." *See* 1 Tex. Admin. Code § 354.1813(c)(2).

McNeill was the only witness who appeared at the trial (other than his attorney, who testified about her attorney's fees). McNeill testified about various topics, including how Defendants (1) conducted their audit, (2) used a non-representative sample when performing their extrapolation analysis, (3) have since changed their extrapolation methodology, and (4) wrongly flagged invalid prescriptions in their audit. He also testified there was never a formal hearing where he was presented with an opportunity to challenge Defendants' methodology and that Defendants had ordered a partial release of the vendor hold (but were still withholding more than the amount of the alleged overpayment).

On cross-examination, Defendants attempted to introduce a business records affidavit showing the current amount of withholding was below the amount of the alleged overpayment. The trial court excluded the affidavit as a discovery sanction, but nonetheless relied upon it in its findings of fact and conclusions of law.

After the trial, the court granted the plea to the jurisdiction and dismissed McNeill's claims for declaratory relief. The trial court also denied McNeill's petition for a writ of mandamus and all other unaddressed forms of relief, including the motion to enforce the Rule 11 agreement. McNeill then requested (and received) findings of fact and conclusions of law.

McNeill timely appealed.[5]

## STANDARD OF REVIEW

We review the instant case *de novo* because it presents an allegation that

---

[5] This appeal was transferred to the Fourteenth Court of Appeals from the Third Court of Appeals. In cases transferred by the Supreme Court of Texas from one court of appeals to another, the transferee court must decide the case in accordance with the precedent of the transferor court under the principles of *stare decisis* if the transferee court's decision otherwise would have been inconsistent with the precedent of the transferor court. *See* Tex. R. App. P. 41.3.

Defendants deprived McNeill of a constitutional right. *Scally v. Tex. State Bd. of Med. Exam'rs,* 351 S.W.3d 434, 446 (Tex. App.—Austin 2011, pet. denied) ("We review claims regarding deprivation of constitutional rights *de novo* because they present questions of law.") (citing *Granek v. Tex. State Bd. of Med. Exam'rs*, 172 S.W.3d 761, 771-72 (Tex. App.—Austin 2005, no pet.)). We also review a plea questioning the trial court's subject matter jurisdiction *de novo. Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

## ANALYSIS

In *Mathews v. Eldridge,* the issue was:

> [W]hether the Due Process Clause of the Fifth Amendment requires that, prior to the termination of Social Security disability benefit payments, the recipient be afforded an opportunity for an evidentiary hearing.

424 U.S. 319, 323 (1976). The instant case involves an even more directly alleged deprivation of a property interest insofar as McNeill essentially alleges Defendants converted money to which he was entitled without affording him an opportunity for an evidentiary hearing. If true, his pleadings evidence an impermissible violation of the United States Constitution. *See Tex. Workers' Comp. Comm'n v. Patient Advocates of Tex.*, 136 S.W.3d 643, 658 (Tex. 2004) (citing *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)).

## I.     Appellate Jurisdiction Extends to McNeill's Appeal.

Before reaching the merits of McNeill's appellate complaints, we first address Defendants' jurisdictional challenge.

This court's appellate jurisdiction generally requires a notice of appeal to be filed within thirty days of the trial court's judgment. The deadline is extended to ninety days if any party timely files "a request for findings of fact and conclusions

of law if findings and conclusions either are required by the Rules of Civil Procedure or, if not required, could properly be considered by the appellate court." Tex. R. App. P. 26.1(a)(4).

McNeill filed his notice of appeal eighty-seven days after the trial court signed its final order; therefore, this court only has appellate jurisdiction if McNeill's request for findings of fact extended the thirty-day deadline. Defendants contend McNeill's request for findings did not extend the deadline because (1) the trial court granted their plea to the jurisdiction and (2) findings of fact were therefore not required. Defendants further contend findings of fact could not be considered in the context of McNeill's petition for a writ of mandamus because McNeill sought mandamus relief on purely legal grounds.

When the trial court renders judgment as a matter of law, a request for findings of fact generally does not extend the time to perfect an appeal. *See IKB Indus. (Nigeria) Ltd. v. Pro-Line Corp.*, 938 S.W.2d 440, 443 (Tex. 1997). But a request for findings can extend the appellate timetables when the judgment is "based in any part on an evidentiary hearing." *Id.*

In this case, there was a full trial on the merits. Even though many (if not all) of the facts regarding McNeill's requests for declaratory and mandamus relief were undisputed at trial, there were fact issues concerning his motion to enforce the Rule 11 agreement. McNeill testified Defendants were withholding more than the amount of the alleged overpayment while Defendants attempted to refute said testimony with a business records affidavit (which the trial court excluded). Defendants nevertheless cross-examined McNeill about whether he had verified the withholding amount with the Commission or the Office of Attorney General, and McNeill conceded he had not.

The trial court resolved the dispute regarding the Rule 11 agreement via a

7

finding that: "Plaintiffs did not show [Defendants] withheld more than the amount of the debt." This finding directly pertains to McNeill's complaint on appeal (discussed *infra*) that "the trial court recognized but failed to enforce the parties' Rule 11 Agreement."

Because the record shows the trial court's judgment was based in part on an evidentiary hearing, findings of fact could properly be considered on appeal; therefore, we conclude that (1) McNeill's request for such findings extended the deadline for filing a notice of appeal and (2) we have appellate jurisdiction. *See Gene Duke Builders, Inc. v. Abilene Hous. Auth.*, 138 S.W.3d 907, 908 (Tex. 2004) (per curiam) (a request for findings extended the deadline in an appeal from a plea to the jurisdiction where evidence was submitted at a hearing on the defendant's status as a unit of state government).

## II.     Defendants are not Entitled to Sovereign Immunity.

The dissent suggests our "analysis must begin with the recognition that the Defendants are protected by sovereign immunity." We reject this suggestion as it applies to the individual capacity claims because individuals sued in their individual capacities are not sovereigns. *Kassen v. Hatley*, 887 S.W.2d 4, 8 (Tex. 1994) ("We distinguish official immunity, which protects individual officials from liability, from sovereign immunity, which protects governmental entities from liability."). Additionally, McNeill sought relief against the individuals in their individual and official capacities for depriving him of Due Process; because they allegedly did so in a manner that is constitutionally-prohibited (and thus without legal authority), their conduct would be *ultra vires* and not entitled to sovereign immunity. *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009). Therefore, we reject the dissent's contention that the Defendants herein "are protected by sovereign immunity" because they are not.

8

Next, the dissent suggests McNeill's failure to appeal the trial court's refusal to provide declaratory relief precludes the possibility that McNeill cleared his "jurisdictional hurdle." We disagree and conclude McNeill's appeal necessarily invokes the trial court's failure to provide relief, particularly insofar as it did not conduct the requisite analysis to determine what process was due. Texas courts are empowered by statute to compel compliance with the rule of law and the Constitution (*see, e.g.,* Tex. Gov't Code Ann. § 2001.038); claims of sovereign immunity cannot preclude courts from conducting that analysis. McNeill's remaining issues in the trial court with regards to the declaratory judgment proceedings should be examined only after the court makes an adjudicative finding about the due process rights to which McNeill is entitled (if any).

## III. The Remaining Non-Constitutional Questions Presented Below Are Not Dispositive.

Texas appellate courts are authorized to "adjudicate a statute to be unconstitutional when its unconstitutionality is *obvious and apparent*, regardless of when or how the question is raised." *Smith v. Decker*, 312 S.W.2d 632, 636 (Tex. 1958) (emphasis added).[6] Appellate examination of such obvious constitutional questions affecting every person and entity conducting comparable business with the State is therefore proper, even when "the issue was not raised in the trial court."

---

[6] (citing *Gohlman, Lester & Co. v. Whittle*, 273 S.W. 808, 812 (Tex. 1925); *Hopson v. Murphy*, 1 Tex. 314, 315 (Tex. 1846); *Commonwealth of Mass. v. Davis*, 160 S.W.2d 543, 551 (Tex. App.—Austin 1942), *aff'd in part, rev'd in part on other grounds*, 168 S.W.2d 216 (Tex. 1942); and *Terrell v. Middleton*, 187 S.W. 367, 370 (Tex. App.—San Antonio 1916, writ denied)); *see also Goheen v. Koester*, 794 S.W.2d 830, 833 (Tex. App.—Dallas 1990, writ denied) (Enoch, C.J.) ("Appellate courts may consider . . . whether a statute is constitutional when its unconstitutionality is obvious and apparent . . . or whether a statute is constitutional when the statute is of sufficient public interest to justify such consideration[.]") (citing (*inter alia*) *Lovejoy v. Lillie*, 569 S.W.2d 501, 503 (Tex. App.—Tyler 1978, writ ref'd n.r.e.) and *Houston Chronicle Publ'g Co. v. City of Houston*, 531 S.W.2d 177, 188 (Tex. App.—Houston [14th Dist.] 1975, writ ref'd n.r.e.)).

*Goheen v. Koester,* 794 S.W.2d 830, 833 (Tex. App.—Dallas 1990, writ denied) (citing *Lovejoy,* at 503).[7] Due to the obvious nature of the constitutional deprivation herein (if a jury believes McNeill's sworn evidence), we elect to address rather than ignore the constitutional question presented.

The dissent urges us to adopt constitutional avoidance.[8] Beyond the obviousness of the alleged constitutional wrong which requires a meaningful opportunity to be rectified, "[i]t must be evident to anyone that the power to declare a legislative enactment void is one which the judge, conscious of the fallability [sic] of the human judgment, will shrink from exercising in any case where he can conscientiously and with due regard to duty and official oath decline the responsibility." *United States v. Lovett*, 328 U.S. 303, 325 (1946) (Frankfurter, J., concurring) (quoting 1 COOLEY, CONSTITUTIONAL LIMITATIONS 332 (8th ed., 1927)).[9] Here, we are unable to decline said responsibility conscientiously and with due regard to our duty and official oath.

The dissent correctly identifies the need to examine the merits of McNeill's non-constitutional issues to determine whether their resolutions will properly resolve

---

[7] *See also Fite v. King,* 718 S.W.2d 345, 350 (Tex. App.—Dallas 1986, writ ref'd n.r.e.) ("Furthermore, this court need not tremble in the face of constitutional questions. It has long been the rule in this state that courts may adjudicate a statute to be unconstitutional when its unconstitutionality is obvious and apparent, regardless of when or how the question is raised.") (citing *Smith v. Decker*, 312 S.W.2d 632, 636 (Tex. 1958)).

[8] *See generally Pena v. State,* 191 S.W.3d 133, 136 (Tex. Crim. App. 2006) ("'If there is one doctrine more deeply rooted than any other in the process of constitutional adjudication, it is that we ought not to pass on questions of constitutionality . . . unless such adjudication is unavoidable.'") (quoting *Clinton v. Jones,* 520 U.S. 681, 690 (1997)); *see also Alma Motor Co. v. Timken-Detroit Axle Co.*, 329 U.S. 129, 136 (1946).

[9] *See also Peters v. Hobby*, 349 U.S. 331, 338 (1955) ("From a very early date, this Court has declined to anticipate a question of constitutional law in advance of the necessity of deciding it.") (citing *Proprietors of Charles River Bridge v. Proprietors of Warren Bridge*, 36 U.S. 420, 553 (1837) and *Alma Motor Co.*, 329 U.S. at 136 (reversing Circuit court which erroneously addressed constitutional questions when controlling non-constitutional issues were presented)).

this case and controversy in accordance with fundamental principles of constitutional law.[10] Our examination of the briefs yields three separate alleged non-constitutional issues:

(1) The trial court erred when it found McNeill failed to show the Commission withheld more than the amounts of the alleged overpayment;

(2) The trial court erred when it failed to honor the parties' Rule 11 agreement; and

(3) The trial court erred when it allowed the Commission to extrapolate the $64,000 amount from $1,300 in allegedly erroneous calculations found in the audit.

We agree with McNeill that the trial court erred when it found he failed to show the Commission withheld more than the amount of the alleged overpayment. Specifically, the trial court excluded the only controverting evidence of McNeill's testimony, then relied upon it to support its findings of fact and conclusions of law. The trial court erred by excluding this untimely affidavit and then considering such excluded "evidence" when reaching its findings of fact and conclusions of law. *See Duer Wagner & Co. v. City of Sweetwater*, 112 S.W.3d 628, 631 (Tex. App.—Eastland 2003, no pet.) (*citing Thompson v. Johnson*, 51 S.W. 23, 24 (Tex. 1898)). Therefore, we find that McNeill did show that the Commission withheld more than the amounts of the alleged overpayment.

However, the discretionary nature of the three non-constitutional issues listed above reveals their inability (individually and collectively) to resolve the core

---

[10] We believe that it is factually impossible to have examined the merits of the non-constitutional questions before observing the obvious and apparent violation of Due Process presented by McNeill herein. The dissent's complaint concerning this belief is created only by eliminating every word after "questions." *Compare* the foregoing sentence *with* dissenting op. at 4 ("[T]he majority asserts in a footnote that "it is factually impossible to have examined the merits of the nonconstitutional [sic] questions."").

constitutional question presented herein. Even though we have concluded the trial court materially erred with respect to at least one of these aforementioned non-constitutional and discretionary issues, the propriety of said rulings is functionally irrelevant to the resolution of this case and controversy because (1) the statutory scheme is devoid of an express remedy, (2) the trial court was therefore effectively incapable of providing a remedy without considering the basic guarantees enshrined in the United States Constitution, and (3) the State insists no remedy is available when the People swear it takes their money under the circumstances at bar.

Therefore, we find McNeill has presented sworn evidence tending to prove the absence of constitutionally guaranteed Due Process and conclude this allegedly plain absence of fundamental protections inescapably presents a case that is "appropriate for judicial determination" and deserving of appellate review. *Joint Anti-Fascist Refugee Comm. v. McGrath,* 341 U.S. 123, 150 (1951) (Frankfurter, J., concurring) ("But in a case raising delicate constitutional questions it is particularly incumbent first to satisfy the threshold inquiry whether we have any business to decide the case at all. Is there, in short, a litigant before us who has a claim presented in a form and under conditions 'appropriate for judicial determination'?") (quoting *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240 (1937)).

In sum, we conclude the constitutional question presented by this alleged governmental deprivation of monies without affording McNeill a meaningful opportunity to be heard is both obvious and unavoidable. Refraining from judgment herein would "depriv[e] appellant of his right to an adjudication on the merits and thus his fundamental right to procedural fairness. This constitutes a violation . . . of the Due Process Clause of the 14th Amendment, 'perhaps the most majestic concept in our whole constitutional system.' Its operation in this case compels conclusions and presumptions that, in effect, deprive this Court of the opportunity to affirm the

12

fairness of the trial." *Men's Wearhouse v. Helms*, 682 S.W.2d 429, 431-32 (Tex. App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.) (Levy, J., dissenting).

## IV.      Money is Property Subject to Due Process Protections.

"Due process of law is a summarized constitutional guarantee of respect for those personal immunities which, as Mr. Justice Cardozo twice wrote for the [United States Supreme] Court, are 'so rooted in the traditions and conscience of our people as to be ranked as fundamental' . . . or are 'implicit in the concept of ordered liberty'." *Rochin v. Cal.,* 342 U.S. 165, 169 (1952) (quoting *Snyder v. Commonwealth of Mass.*, 291 U.S. 97, 105 (1934) and *Palko v. State of Conn.*, 302 U.S. 319 (1937)); *see also Eldridge*, 424 U.S. at 333 (The "right to be heard before being condemned to suffer grievous loss of any kind, even though it may not involve the stigma and hardships of a criminal conviction, is a principle basic to our society.") (quoting *Joint Anti-Fascist Comm.,* 341 U.S. at 168 (Frankfurter, J., concurring)). It would appear to be beyond debate that money is a legitimate property interest in contemporary American society and that the interest in protecting it from State-sponsored conversion is a fundamental interest entitled to Due Process protections. *See Stratton v. Austin Indep. Sch. Dist.,* 8 S.W.3d 26, 29 (Tex. App.—Austin, 1999, no pet.) ("A person's property interests include actual ownership of real estate, chattels, and money.") (citing *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 572 (1972)).[11]

---

[11] *See also Ochoa v. Hernandez y Morales,* 230 U.S. 139, 161 (1913) ("Whatever else may be uncertain about the definition of the term 'due process of law,' **all authorities agree** that it inhibits the taking of one [person's] property and giving it to another, contrary to settled usages and modes of procedure, and without notice or an opportunity for a hearing.") (emphasis added); *Spann v. City of Dallas,* 235 S.W. 513, 515 (Tex. 1921) ("To secure their property was one of the great ends for which [people] entered into society. The right to acquire and own property, and to deal with it and use it as the owner chooses, so long as the use harms nobody, is a natural right. It does not owe its origin to constitutions. It existed before them. It is a part of the citizen's natural liberty — an expression of [their] freedom, guaranteed as inviolate by every American Bill of Rights."); and *Eggemeyer v. Eggemeyer,* 554 S.W.2d 137, 140 (Tex. 1977) ("The protection of

## V.  McNeill Was Entitled to a Full and Fair Hearing.

Defendants do not dispute they seized McNeill's property via administrative proceedings; instead, they dispute the amount and defend the legitimacy of their method. "In [Texas] administrative proceedings, due process requires that parties be accorded a full and fair hearing on disputed fact issues." *Office of Pub. Util. Counsel v. Pub. Util. Comm'n*, 185 S.W.3d 555, 574 (Tex. App.—Austin 2006, pet. denied) (citing {*inter alia*} *City of Corpus Christi v. Pub. Util. Comm'n of Tex.,* 51 S.W.3d 231, 262 (Tex. 2001) (per curiam)). McNeill swears Defendants unlawfully took his money via an administrative act and Defendants disagree. Under the circumstances, this constitutes a factual dispute which entitles McNeill to a full and fair hearing.[12]

If McNeill is mistaken, let it be proven at trial. If he has committed perjury, let him be presented for prosecution. If he has violated the Rules regarding frivolous pleadings, let him be presented for sanctions. However, we have found no fact which permits us to entirely disregard sworn allegations properly presented to our revered state courts via a duly-licensed attorney bound by clearly established rules,

---

one's right to own property is said to be one of the most important purposes of government. That right has been described as fundamental, natural, inherent, inalienable, not derived from the legislature and as preexisting even constitutions.") (citing *Pa. Coal Co. v. Mahon*, 260 U.S. 393 (1922), 28 A.L.R. 1321 (1924), and 16 Am. Jur. 2d, *Constitutional Law* § 362 (1964)).

[12] Additionally, the record herein contains (1) an administrative order (C.R. 48-49) which ordered McNeill's pharmacy to pay $64,549.30 and (2) evidence tending to support McNeill's allegations that Defendants erroneously computed said amount. Therefore, this case presents at least one factual dispute that needs to be resolved; as a result, the hearing otherwise required by Due Process cannot be ignored. *See Bell v. Tex. Workers Comp. Comm'n*, 102 S.W.3d 299, 305-06 (Tex. App.—Austin 2003, no pet.) ("Due process does not require the holding of a useless hearing when there are no factual disputes to resolve."); *see also Gilbert v. Homar,* 520 U.S. 924, 933 (1997) ("[T]here is no need for any presuspension process since there would be nothing to consider at the hearing except the independently verifiable fact of whether an employee had indeed been formally charged with a felony."). *Cf. Limon v. State,* 947 S.W. 2d 620, 627 (Tex. App.—Austin 1997, no writ) ("We note that a hearing on an applicant's failure to post a bond would seem to us to be meaningless; a bond is either posted or it is not.").

14

particularly in light of clearly established constitutional protections prohibiting governmental seizure of the People's property without Due Process.

## VI.    No Evidence Tends to Prove McNeill Received a Full and Fair Hearing.

The record demonstrates McNeill received an "informal hearing" in accordance with state law; it contains zero evidence, however, tending to prove said hearing was a "full and fair hearing" or that it even provided McNeill with the "rudiments of fair play." *See Univ. of Tex. Med. Sch. at Houston v. Than*, 901 S.W.2d 926, 931 (Tex. 1995) (Due Process requires more than an informal hearing); *see also State v. Crank,* 666 S.W.2d 91, 94 (Tex. 1984), *cert. denied*, 469 U.S. 833 (1984) ("[T]he ultimate test of due process of law in an administrative hearing is the presence or absence of rudiments of fair play.") and *Ray v. Tex. State Bd. of Pub. Accountancy,* 4 S.W.3d 429, 433 (Tex. App.—Austin 1999, no pet.) ("Texas courts have also defined the minimum as requiring the presence of the 'rudiments of fair play.'") (citing *Crank,* 666 S.W.2d at 94). Instead, "informal hearings" in Texas are frequently utilized to determine if more formal process is warranted.[13]

---

[13] *See, e.g., Druery v. State,* 412 S.W.3d 523, 538 (Tex. Crim. App. 2013) (informal hearing concerning competency was to determine if a formal hearing was warranted, not to determine the merits); *In re Rose,* 144 S.W.3d 661, 673-74 (Tex. Rev. Trib. 2004, no appeal) (informal hearing led to formal proceedings) *In re Thoma,* 873 S.W.2d 477, 510 (Tex. Rev. Trib. 1994, no appeal) (same); *Cty. of Dallas v. Wiland,* 124 S.W.3d 390, 399 (Tex. App.—Dallas 2003) (deputies dissatisfied with the results of their informal hearing could appeal), *overruled on other grounds*, 216 S.W.3d 344 (Tex. 2007); *Crawford Heavy & Marine Constr. Ltd. v. Tex. Dep't of Transp.,* No. 03-95-00327-CV, 1996 WL 591171, at *2 n.3 (Tex. App.—Austin May 22, 1996, writ denied) (per curiam) (mem. op., not designated for publication) (observing the relevant procedure allowed for an informal hearing then "a contested case hearing under the APA."); *United Indep. Sch. Dist. v. Gonzalez*, 911 S.W.2d 118, 126 (Tex. App.—San Antonio 1995, writ denied) (principal held informal hearing then suspended a student pending an expulsion hearing); and *Pasadena Indep. Sch. Dist. v. Emmons*, 586 S.W.2d 151, 152 (Tex. App.—Houston [1st Dist.] 1979, writ dism'd) (after an informal hearing that resulted in referral to the "school district's guidance center," the principal's decision was subject to administrative appeals); *cf. Landry v. State,* 504 S.W.2d 580, 582 (Tex. App.—Beaumont 1973, writ ref'd n.r.e.) (drawing a distinction between trials and informal hearings) and *Ex parte Serna*, 957 S.W.2d 598, 623 (Tex. App.—Fort Worth 1997, pet. denied) (same).

Here, no additional formal process was provided, the statute in question does not provide such process, and Defendants insist no such process was warranted (despite the undisputed deprivation of McNeill's money). Assuming *arguendo* Defendants personally complied with the relevant statutory scheme, we cannot presume Due Process was satisfied, particularly where the statute itself does not appear to contemplate constitutionally sufficient process.

**VII.** **The Parties Have Not Briefed the Controlling Issue.**

In *Eldridge,* the Supreme Court clearly stated:

> [R]esolution of the issue whether the administrative procedures provided here are constitutionally sufficient requires analysis of the governmental and private interests that are affected.

424 U.S. at 334 (citing *Arnett v. Kennedy*, 416 U.S. 134, 166 (1974) (Powell, J., concurring in part); *Goldberg v. Kelly*, 397 U.S. 254, 263-66 (1970); and *Cafeteria Workers v. McElroy*, 367 U.S. 886, 895 (1961)). More specifically, the Court held:

> [I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* (citing *Goldberg,* 397 U.S. at 263-271).

Additionally, "[i]t is well recognized under Texas law that there is no right to judicial review of an administrative order unless a statute provides a right or unless the order adversely affects a vested property right or otherwise violates a constitutional right." *Cont'l Cas. Ins. Co. v. Functional Restoration Assocs.*, 19 S.W.3d 393, 397 (Tex. 2000) (citing *Stone v. Tex. Liquor Control Bd.*, 417 S.W.2d

16

385, 385-86 (Tex. 1967) and *Firemen's & Policemen's Civil Serv. Comm'n of City of Fort Worth v. Kennedy*, 514 S.W.2d 237, 239 (Tex. 1974)).  Here, a constitutional right is (and was at all times relevant hereto) plainly implicated;[14] however, the parties did not identify (or brief) this issue.

Due to the fact that these dispositive issues were not presented below, we reverse and remand this case to the trial court with instructions to perform an *Eldridge* analysis.  *See Scott*, 392 S.W.3d at 140 ("We believe in this case that the inquiries involved in a due process analysis would be better served by a more complete development of the factual situation, rather than through the procedural limitations of a plea to the jurisdiction.").  The dissent criticizes this decision and asks what we "expect the trial court to perform on remand that it did not perform the first time, and that this court could not determine for itself?"  First, we expect the trial court to comply with our instructions and to perform the *Eldridge* analyses (specifically including (*inter alia*) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  *Eldridge,* 424 U.S. at 334 (citing *Goldberg,*

---

[14] The dissent's citations to *McAllen Hospitals, L.P. v. Suehs*, 426 S.W.3d 304 (Tex. App.—Amarillo 2014, no pet.) and *Scott v. Alphonso Crutch LSC Charter School, Inc.*, 392 S.W.3d 165 (Tex. App.—Austin 2010, pet. denied), for the proposition that McNeill lacked a vested property interest are unpersuasive.  First, the hospitals in *McAllen Hospitals, L.P.* were subject to a review of whether an "inpatient stay billed to Texas Medicaid" was medically necessary (a matter of judgment) while the instant case involves a seizure of monies pursuant to an allegedly flawed methodology (a matter of relative mathematical certainty).  *See McAllen Hosps., L.P.*, 426 S.W.3d at 313.  Second, the hospital also had a remedy to re-bill Texas Medicaid "as an outpatient claim if a physician's order for outpatient observation is present in the hospital medical record (per [1 Tex. Admin. Code] § 371.206(b))"; the absence of evidence showing the hospital made use of said available remedy precluded the propriety of finding a Due Process violation.  *Id.* at 313-14.  Here, however, the State contends there is no remedy available.  Third, the disputed disbursement of funds in *Scott* was expressly predicated upon a verifiable change in the number of students and the Third Court of Appeals' decision was silent regarding allegedly faulty mechanisms to measure said change.

397 U.S. at 263-271).

Second, the dissent's proposition would require us to (*inter alia*) decide the government's interest as a matter of law then measure the result against competing interests despite the absence of briefing on appeal. Rectifying an alleged deprivation of Due Process in this manner unnecessarily initiates an additional and inequitable deprivation of Due Process and we cannot decide these issues in the first instance without unnecessarily engaging in judicial activism. Instead, we simply honor the protections laid forth in the United States Constitution and instruct the trial court to conduct an *Eldridge* analysis (including a determination of the public and private interests at stake). While we agree "[t]he remedy for a denial of due process is due process",[15] we are incapable of ordering the provision of said process without finding the State waived its opportunity to present its interests; we decline to make said finding, particularly given our uniform agreement that McNeill's brief did not fully present this issue in a manner that would have given the State notice that it needed to brief its relevant interests.

**VIII.**      ***Pharmserv* is Both Distinguished and Irreconcilable With Another Decision from the Third Court of Appeals.**

Texas Rule of Appellate Procedure 41.3 dictates that we (as a transferee court) "*must* decide [this] case in accordance with the precedent of the transferor court under the principles of *stare decisis* . . . ." Tex. R. App. P. 41.3 (emphasis added). Here, the Third Court of Appeals (as the transferor court) has decided a facially comparable case, *Pharmserv, Inc. v. Texas Health and Human Services Commission*, No. 01-13-00526-CV, 2015 WL 1612006 (Tex. App.—Austin Apr. 9, 2015, no pet.) (mem. op.) That case, however, is not controlling.

---

[15] *Mosley v. Tex. Health & Human Servs. Comm'n*, -- S.W.3d --, 2019 WL 1977062, at *9 (Tex. May 3, 2019).

18

In *Pharmserv,* the Third Court of Appeals observed the appellant pharmacy cited no statute or rule "as a basis for its purported right to a SOAH hearing." *Id.* at *6. There, the pharmacy expressly invoked the Texas Constitution; here, McNeill has argued "due process" (and cites to at least one case invoking the Fifth Amendment's due process clause). Therefore, we conclude McNeill's express use of language from the United States Constitution and citation to specific precedent concerning same invokes (albeit unartfully) the clearly-established guarantees enshrined therein (as opposed to the "due course of law" provision in the Texas Constitution). The Third Court of Appeals was not presented with a question concerning the United States' Constitution's Due Process Clause; we are therefore not bound by their decision in *Pharmserv*.

Additionally, the Third Court of Appeals' decision in *Office of Public Utility Counsel* mandates "full and fair hearing[s]" concerning disputed fact issues in administrative proceedings. *Office of Pub. Util. Counsel,* 185 S.W.3d at 574. The record plainly reveals contested facts (including the accuracy of Defendants' extrapolative analysis and the balance of monies allegedly owed.) Given the presence of disputed fact issues, Rule 41.3 requires us to conclude McNeill was entitled to such a hearing. While we readily acknowledge the apparent tension between *Pharmserv* and *Office of Public Utility Counsel*, we defer to the Third Court of Appeals' holding in *Office of Public Utility Counsel*[16] because it (1) comports with the Due Process Clause of the United States Constitution, (2) is reported, and (3) has been cited by four different courts of appeals (including the Third Court) concerning Due Process, whereas *Pharmserv* is unpublished and has been cited three

---

[16] Additionally, if *Pharmserv* were a case decided by the Fourteenth Court of Appeals (or if Tex. R. App. P. 41.3 allowed us to do so), we could *sua sponte* refer this matter to the en banc court to correct the conclusions in that opinion. However, because this case was transferred from the Austin Court of Appeals, we are powerless to use that procedure here.

times by two courts (including the Third Court) for an unrelated proposition. Given (1) the absence of any evidence showing a full and fair hearing was held, (2) the presence of evidence affirmatively tending to prove such a hearing did not occur, and (3) the apparent governmental deprivation of property despite clearly established constitutional protections, we reverse and remand for proceedings consistent with this opinion.

## CONCLUSION

"The Due Process Clause 'ensure[s] that the States, through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system.'" *Michiana Easy Livin' Country, Inc. v. Holten,* 168 S.W.3d 777, 793 (Tex. 2005) (quoting *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292 (1980)). McNeill elected to pursue his remedies in state court and there is no showing that said choice was fundamentally erroneous. The trial court failed to honor McNeill's guaranteed right to Due Process when it concluded it lacked jurisdiction to hear McNeill's allegations that Defendants illegally took his money. *See generally In re Rowe*, 113 S.W.3d 749, 752-53 (Tex. App.—Austin 2003, orig. proceeding) (courts are not authorized to violate a party's rights to Due Process) (citing *In re Acceptance Ins. Co.,* 33 S.W.3d 443, 449 (Tex. App.—Fort Worth 2000, orig. proceeding)); *see also P. W. Gallagher & Co. v. Goldfrank, Frank & Co*., 63 Tex. 473, 475 (Tex. 1885) ("A right expressly guarantied [sic] by the constitution ought not to be disallowed[.]").

Although the State is a sovereign entitled to exercise certain powers, the legitimacy thereof depends in large measure upon whether the regulations at issue are "really designed to accomplish a purpose properly falling within the scope of police power." *Williams v. State,* 176 S.W.2d 177, 182 (Tex. Crim. App. 1943). Here, McNeill has alleged Defendants improperly took his money via (*inter alia*)

20

the application of an erroneous extrapolative methodology while depriving him of an adequate opportunity to be heard concerning said error. This State-sponsored deprivation of money (whether by accident or design) cannot constitute "a purpose properly falling within the scope of police power." *Id.*

At its core, the State argues the judiciary should sanction state-sponsored seizures of property the People swear belongs to them (without affording them a constitutionally-adequate opportunity to voice allegations said seizures were contrary to law) simply because both the Legislature and the administrative branch failed to provide an express remedy. These alleged failures to expressly account for unambiguous constitutional principles are inherently incapable of affecting the People's clearly established right to Due Process. Therefore, we reverse the trial court's dismissal and remand for a determination as to whether the process afforded herein is compliant with the Supreme Court's decision in *Eldridge.*

/s/ Meagan Hassan
   Justice

Panel consists of Justices Christopher, Hassan, and Poissant (Christopher, J., dissenting).